# Exhibit 5



# DEALER SALES AND SERVICE AGREEMENT

*THIS AGREEMENT* is made and entered into by and between **Mitsubishi Motors North America, Inc.** a California corporation, with headquarters at 6400 Katella Avenue, Cypress, California 90630 (hereinafter referred to as "MMNA"), and

Spartan Auto Group LLC
(Name of Dealer)

a _____New York_____ Limited Liability Company doing business as
(State)

Victory Mitsubishi
(Name)

at   4070 Boston Road,                                         Bronx,
(Number and Street)                                              (City)
Bronx                         County,        New York              10475
(County)                                        (State)                  (Zip)
(hereinafter referred to as "**Dealer**").


## 1.    BASIS OF AGREEMENT

*This Agreement* provides for the nonexclusive right of **Dealer** to sell and service motor vehicles which are listed on the most recent *MMNA Product* List as issued by **MMNA** from time to time, and related parts, accessories and options distributed in the United States by **MMNA**. **Dealer** acknowledges that Mitsubishi Motors Corporation and other manufacturers supplying motor vehicles to **MMNA** may now or in the future distribute motor vehicles or related products in the United States through distributors other than **MMNA**, and that entering into *this Agreement* confers no rights or benefits upon **Dealer** with respect to the sale or servicing of such motor vehicles or products.

## 2.    TERM

*This Agreement* shall continue in effect for a period of three (3) years from its effective date, unless earlier terminated by **Dealer** pursuant to Section X.A. of the accompanying MMNA Dealer Sales and Service Agreement Standard Provisions  (hereinafter referred to as the ("Standard Provisions")or earlier terminated by **MMNA** pursuant to Section X.B. of the Standard Provisions.  Unless earlier terminated by **MMNA** or **Dealer, MMNA** shall, not less than three (3) months prior to the expiration of *this Agreement*, conduct an evaluation of **Dealer's** performance to determine whether **Dealer** qualifies for renewal of *this Agreement* for an additional three (3) year term. Criteria considered in such evaluation shall be as set forth in the *Dealer Development Plan* then in effect for **Dealer**.  If **MMNA** determines that **Dealer** qualifies for renewal of its MMNA dealership, **Dealer** and **MMNA** shall execute an MMNA Dealer Sales and Service Agreement in the form then used by **MMNA**, which agreement will include similar provisions for further re-qualification and renewal.

If, at any time, **MMNA** determines that a different or revised form of dealer sales and service agreement would better serve the interests of the parties, **MMNA** may, upon a minimum of thirty (30) days' notice to **Dealer**, terminate *this Agreement* and offer the new or amended form of agreement to **Dealer** in its stead.  **Dealer** must accept the new or amended form of agreement within thirty (30) days of receipt thereof.

(Rev. 8/21/03)

Agreement Date _____                                          1
(DAP005)

## 3. OWNERSHIP OF DEALER

**MMNA** and **Dealer** recognize that the ability of **Dealer** to satisfactorily perform *this Agreement* is conditioned upon the continued active involvement in and/or ownership of **Dealer** by the following person(s) in the percentage(s) shown (hereinafter referred to as the *"Owners"*):

| Name | Title | Percentage of Ownership | Involvement in Management (Active or Inactive) |
|------|-------|-------------------------|-----------------------------------------------|
| Diane Argropoulos | Member | 30% | Active |
| Philip Argropoulos | Manager | 70% | Active |

*This Agreement* has been entered into by **MMNA** in reliance upon, and in consideration of, the personal qualifications and representations of the above-named *Owners*. Accordingly, except as otherwise provided herein, no change in the active involvement in **Dealer's** management by the *Owners* and no change in the ownership of **Dealer** by the *Owners* which results in a change in majority control or interest shall be permitted by **Dealer** or any *Owner* without the prior written approval of **MMNA**, which approval shall not be unreasonably withheld.

## 4. MANAGEMENT OF DEALER

**Dealer** represents that   Diane Argyropoulos   exercises the functions of general manager and   Philip Argyropoulos   exercises the functions of   Dealer Principal   (hereinafter referred to as the *"Executive Managers"*) of its MMNA dealership and that each has complete authority to make all decisions on behalf of **Dealer** with respect to the dealership operations.

**MMNA** has entered into *this Agreement* in reliance upon, and in consideration of, the personal qualifications and representations of the above-named *Executive Managers*. Accordingly, **Dealer** agrees that there shall be no change in the *Executive Managers* without **MMNA's** prior written consent. **Dealer** shall give **MMNA** prior written notice of any proposed change in *Executive Managers* (including the name and qualifications of the person proposed to be appointed as a replacement *Executive Manager*) and **MMNA** shall have the right, in its sole and reasonable discretion, to determine whether the proposed candidate possesses the requisite qualifications and experience for the position.

## 5. SALES LOCALITY

Subject to and in accordance with the terms and conditions hereof, **MMNA** has established the following *Sales Locality* as the non-exclusive, primary area of responsibility for **Dealer's** promotion and sale of *MMNA Products*:

City of:   Bronx

County or Parish of   Bronx   State of   New York

Except as may be otherwise required by applicable law, **MMNA** reserves the right to sell and/or lease *MMNA Products* to others (including, without limitation, public or private fleet purchasers and employees of **MMNA** or its affiliates) and to enter into MMNA Dealer Sales and Service Agreements with others within and without the *Sales Locality*. **MMNA** and **Dealer** agree that additional *MMNA Dealers* may be appointed in or near the *Sales Locality* when **MMNA** determines, in accordance with applicable law, that additional **MMNA** sales and service facilities are warranted.

Nothing contained in *this Agreement* shall require or be construed to require **Dealer's** approval of **MMNA** entering into MMNA Dealer Sales and Service Agreements or any other agreements with others within or without the *Sales Locality*.

Agreement Date _____



2

## 6.   DEALERSHIP PREMISES

**MMNA** has approved the following premises as the location of **Dealer's** MMNA sales and service operations (hereinafter referred to as the "*Dealership Premises*").

**MMNA New Vehicle Sales Facilities**

4070 Boston Road

Bronx, New York   10475

**Parts and Service Facilities**

3530 Noell Ave.

Bronx,  New York  10475

**General Offices**

4070 Boston Road (General Office)

Bronx,  New York  10475

**Used Vehicle Display and Sales Facilities**

4070 Boston Road

Bronx,  New York  10475

**Vehicle Storage Facilities**

3520 Delavall Ave.

Bronx,   New York  10475

Agreement Date _____      3

**Body and Paint Facilities**

**Parts Delivery**

**MMNA** and **Dealer** recognize that **Dealer** may sell *MMNA Products* to customers wherever they may be located. However, in order that **MMNA** may establish and maintain an effective network of *MMNA Dealers* for the sale and servicing of *MMNA Products*, **Dealer** specifically agrees that, without the prior written approval of **MMNA**, it shall not display *MMNA Trademarks* or, either directly or indirectly, establish any place or places of business for the conduct of any of its MMNA dealership operations, except on the *Dealership Premises* in the manner and for the purposes described above.

**Dealer** shall maintain all requirements and conditions of this **MMNA** Dealer Sales and Service Agreement as outlined in **Dealer's** most recent Dealer Development Plan, including but not limited to exclusive facility, management and capital requirements.

**7.     LICENSES**

**Dealer** agrees to secure and maintain all licenses required for the operation of its business as contemplated by *this Agreement* in any state or jurisdiction where its MMNA dealership operations are to be conducted. If any such license or licenses are required, *this Agreement* shall not become effective, unless and until all such required licenses have been obtained and **Dealer** furnishes **MMNA** with a copy of all such licenses together with written notice specifying the date and number, if any, of all such licenses. **Dealer** shall notify **MMNA** immediately in writing if **Dealer** fails to secure, maintain or renew any such license. If any required license is suspended or revoked, **Dealer** shall notify **MMNA** immediately in writing of the effective date of such suspension or revocation.

**8.     SCOPE OF AGREEMENT**

**Dealer** agrees to be bound by and comply with each and every term of this MMNA Dealer Sales and Service Agreement, all schedules hereto, the Standard Provisions, the *Dealer Development Plan*, the most recent *Product List* and all *Product Addenda*, the *Warranty Manual* and all other manuals heretofore or hereafter issued by **MMNA**, all modifications, extensions or renewals of any of the foregoing, and each and every bulletin or directive heretofore or hereafter issued to **Dealer** by **MMNA**. **MMNA** may from time to time deliver to **Dealer** a *Product Addendum* setting forth special terms and conditions applicable to particular *MMNA Vehicles* designated in the *Product Addendum*. Such special terms and conditions shall supersede and control any inconsistent terms and conditions in *this Agreement* with respect to the *MMNA Vehicles* designated in the *Product Addendum*. Each *Product Addendum* shall be effective as of the date specified in the *Product Addendum* and shall remain effective (1) until it is amended or terminated by its own terms or by a new *Product Addendum*, (2) until the *MMNA Vehicles* designated in the *Product Addendum* are no longer distributed by **MMNA**, or (3) until termination of *this Agreement*.

**9.     DEFINITIONS**

Italicized terms used herein shall have the meanings set forth in Section II of the Standard Provisions

**10.    GOVERNING LAW**

*This Agreement* shall be governed by, and construed in accordance with, the laws of the State of California.

Agreement Date _____          4

## 11.   JURISDICTION

**MMNA** and **Dealer** agree that all litigation between **MMNA** and **Dealer** which may arise out of or in connection with *this Agreement* or any transaction between them shall be subject to the exclusive jurisdiction of the courts of the State of California or of the federal courts sitting therein, and each hereby consents to the jurisdiction of such courts. **Dealer** agrees that any and all process directed to it in any such litigation may be served upon it outside of California with the same force and effect as if such service had been made within California.

## 12.   LEGAL EFFECT

*This Agreement* terminates and supersedes all prior written or oral agreements and understandings, if any, between **MMNA** and **Dealer,** except (1) any agreements expressly referred to and incorporated herein, (2) any indebtedness which may be owing by either **MMNA** or **Dealer** to the other, and (3) any of **Dealer's** unfilled orders with MMNA for any *MMNA Products* placed with **MMNA** pursuant to the provisions of any sales agreement terminated or superseded by *this Agreement.* Except as herein otherwise provided, upon execution of *this Agreement* by **Dealer** and in consideration of **MMNA's** entering into *this Agreement,* **Dealer** releases **MMNA** from any and all claims, demands, contracts and liabilities (including, but not limited to, statutory liabilities), known or unknown, of any kind or nature whatsoever, arising from or out of or in connection with any such prior agreements, business transactions, course of dealing, discussions or negotiations between the parties prior to the effective date hereof. **Dealer** expressly acknowledges and waives the application of California Civil Code §1542 which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

## 13.   NOTICES

Any notice to be given hereunder may be delivered to the party if a sole proprietor, to a partner of the party if a partnership, or to an officer of the party if a corporation, or may be given by sending such notice by registered or certified mail or by telegram or tested telex addressed, if to **Dealer**, to its principal office as above stated, and if to **MMNA**, to its headquarters as above stated, marked "Attention President". Except as otherwise provided in *this Agreement,* any notice so given shall be considered to have been given when delivered or mailed as provided above.

## 14.   AUTHORITY OF DEALER

If **Dealer** is a partnership or corporation, **Dealer** shall provide **MMNA** with a certified copy of the partnership authorization, corporate resolution or other document evidencing the authority of **Dealer** to enter into and adhere to the terms of *this Agreement.*

## 15.   VALIDITY

No representative of **MMNA** shall have authority, other than by a writing signed by the President or an Executive Vice President or two Vice Presidents of **MMNA**, to renew, extend or terminate *this Agreement,* or to amend, modify or waive any provision of *this Agreement* or any performance required hereby, or to make any agreement which imposes obligations on either **MMNA** or **Dealer** not specifically imposed by *this Agreement.*

## 16.   ATTACHMENT

**"See attached Addendum"**

Agreement Date _____



5

IN WITNESS OF THE FOREGOING, the parties hereto have executed *this Agreement* in duplicate. *THIS AGREEMENT* SHALL NOT BECOME EFFECTIVE UNTIL IT HAS BEEN SIGNED BY THE PRESIDENT OR AN EXECUTIVE VICE PRESIDENT OR TWO VICE PRESIDENTS OF **MMNA**. **DEALER** WILL BE NOTIFIED IN WRITING BY MMNA WHEN *THIS AGREEMENT* HAS BEEN SO SIGNED, WHICH NOTICE WILL SPECIFY THE EFFECTIVE DATE OF *THIS AGREEMENT*.

Spartan Auto Group LLC
dba Victory Mitsubishi

_____
(Dealer's Firm Name)

By _____     Date   12/18/17

Title _____

By _____     Date _____

Title _____

                                        _____
                                        (Witness)

**Mitsubishi Motors North America, Inc.**

By _____     Date _____
   (Chairman)

                    OR

By _____     Date _____
   (Executive Vice President)

                    OR

By _____     Date   JAN 3 0 2018
   (Vice President)

              and

By _____     Date   JAN 3 0 2018
   (Vice President)



Spartan Auto Group, LLC
dba Victory Mitsubishi

# ADDENDUM
## Terms and Conditions

Set forth below are the terms and conditions to be satisfied by Dealer, as referenced in MMNA's original Letter of Intent dated April 3, 2017, the Letter of Intent Amendment dated December 5, 2017, and incorporated by this reference, and Section 16 of the MMNA Sales and Service Agreement, to which this is attached as an Addendum.

Dealer shall provide an exclusive sales operation for MMNA products on property located at **4070 Boston Road, Bronx, New York**, and an exclusive service and parts operation for MMNA products on property located at **3530 Noell Avenue, Bronx, New York**, as noted on Attachments 1, 2 and 3.  Dealer shall be operational no later than **January 30, 2018**.

Dealer acknowledges and agrees to renovate said Mitsubishi facility by upgrading all electrical, lighting, furniture, HVAC and plumbing systems in addition to upgrading equipment in the service and parts departments.  Dealer also agrees to repaint the interior and exterior of the facility (in approved Mitsubishi colors), provide sufficient space on the exterior of the facility for approved Mitsubishi signage and acquire new furniture for the customer waiting area.  Said **renovations** shall be completed by **January 30, 2018**.

Dealer's facilities exceed MMNA facility requirements in one or more departmental areas and/or total square footage.  Dealer shall provide an exclusive Mitsubishi operation and any modification in the use of the facility, including the addition of other new line makes, must receive MMNA's prior written approval.

Dealer shall purchase and install all required and allowable underline exterior elements of the MMNA Retail Image Program as set forth in the Letter of Intent dated April 3, 2017, the Letter of Intent Amendment dated December 5, 2017, and incorporated by this reference, within six (6) months of the effective date of this Dealer Agreement.

By: _____   Title: _DLR PRIN_____   Date: _1/18/18_

**MITSUBISHI**
MOTORS NORTH AMERICA, Inc.

Agreement Date _____

7

# Mitsubishi Showroom Site Plan



ATTACHMENT 1

# Part & Service Facility Layout



# Showroom Layout



PROPOSED SALES
BUILDING FLOOR PLAN

Sales
Tower

RF

Sales
Offices



---

## DEALER SALES AND SERVICE AGREEMENT
## STANDARD PROVISIONS

---

# MITSUBISHI
# MOTORS NORTH AMERICA, INC.

## TABLE OF CONTENTS

I. GENERAL OBLIGATIONS ................................................................................................1

II. DEFINITIONS ................................................................................................................1

III. SALES OF MMNA PRODUCTS TO DEALER ...........................................................3

   A. Orders ..........................................................................................................................3

   B. Deliveries ....................................................................................................................3
     1. Mode and Place of Delivery ....................................................................................3
     2. Diversion of Deliveries ............................................................................................4
     3. Delay or Failure to Deliver ......................................................................................4
     4. Damage Claims Against Carriers .............................................................................4

   C. Prices and Other Terms of Sales ................................................................................4
     1. Price Changes ...........................................................................................................4
     2. Payment for MMNA Vehicles ..................................................................................4
     3. Payment for MMNA Products other than MMNA Vehicles .....................................5
     4. Failure of Financing Arrangements ..........................................................................5
     5. Title and Risk of Loss ..............................................................................................6
     6. Collection of Indebtedness .......................................................................................6
     7. Refunds ....................................................................................................................6

   D. Product Warranties .....................................................................................................7

   E. Change of Design, Options or Specifications .............................................................7

   F. Vehicles Excluded .......................................................................................................7

IV. DEALERSHIP PREMISES ...........................................................................................8

   A. Responsibilities of Dealer ...........................................................................................8

   B. Automobile Leasing or Rental Business .....................................................................8

   C. Related Activities of Dealer or Dealer's Owners, or Executive Managers ................8

   D. Personnel ....................................................................................................................9



E. Insurance ..................................................................................................................9

F. Maintaining Operations Open for Business ...........................................................10

G. Minimum Vehicle Inventories ...............................................................................10

H. Signs ......................................................................................................................10

I. Electronic Communications System .......................................................................10

J. Planning Assistance for Dealership Premises .......................................................11

V. NET WORKING CAPITAL ........................................................................................11

VI. ACCOUNTS, RECORDS AND REPORTS..............................................................11

A. Uniform Accounting System .................................................................................11

B. Sales Reporting .....................................................................................................11

C. Sales and Service Records ...................................................................................11

D. Examination of Accounts and Records .................................................................12

VII. PROMOTING AND SELLING MMNA PRODUCTS ................................................12

A. Responsibilities of Dealer .....................................................................................12

B. Sales and Performance Criteria ............................................................................12
    1. Dealer Development Plan .................................................................................12
    2. Determination of Minimum Sales Responsibility..............................................13

C. Sales Operations ...................................................................................................13
    1. Sales Organization ..........................................................................................13
    2. Representations in the Sale of MMNA Vehicles...............................................13
    3. Customer Deposits ..........................................................................................14

D. Advertising ............................................................................................................14
    1. Misleading Advertising .....................................................................................14
    2. MMNA Dealer Advertising Association ............................................................14
    3. Dealer Cooperative Promotional Fund .............................................................14

E. Assistance Provided by MMNA .............................................................................15
    1. Sales Training Assistance ................................................................................15
    2. Field Sales Personnel ......................................................................................15



**VIII. SERVICING MMNA VEHICLES** ..................................................................**15**

  **A. Responsibilities of Dealer** ..................................................................**15**
    1. Warranty Service.........................................................................15
    2. New Motor Vehicle Pre-Delivery Service ....................................16
    3. Free Maintenance ........................................................................16
    4. Use of Parts ................................................................................16
    5. Campaign Inspections and Corrections.........................................17
    6. Compliance With Safety and Emission Control Requirements .........17

  **B. Service Operations** ............................................................................**18**
    1. Service and Parts Organization ....................................................18
    2. Paint and Body Facilities ............................................................18
    3. Workshop....................................................................................18
    4. Handling of Service Complaints ..................................................19
    5. Stock of Parts .............................................................................19
    6. Parts Inventory Control ...............................................................19
    7. Service Rentals............................................................................20

  **C. Assistance Provided by MMNA** ...........................................................**20**
    1. Service Training Assistance.........................................................20
    2. Service Manuals and Materials ....................................................20
    3. Field Service Personnel Assistance..............................................20

**IX. DISPLAY OF TRADEMARKS, SERVICE MARKS AND TRADE NAMES** ...............**20**

**X. TERMINATION OF AGREEMENT** .........................................................**21**

  **A. Dealer May Terminate This Agreement Upon Thirty (30) Days Prior Written Notice To MMNA**.......................................................................**21**

  **B. MMNA May Terminate This Agreement For Cause** .......................................**21**

  **C. Notice and Effect of Termination** .......................................................**24**

  **D. Establishment of Successor Dealer** .....................................................**24**

  **E. Continuance of Business Relations** .....................................................**26**

  **F. Discontinuance of Use of Marks** .........................................................**26**

  **G. Repurchase Provisions** ....................................................................**26**

**XI. POLICY REVIEW BOARD** ................................................................**28**



A. Establishment of Policy Review Board ...............................................................28

B. Appeal of Dealer Appointment to Policy Review Board ................................27

C. Appeal of Termination to Policy Review Board................................................27

D. Arbitration of Claims by Dealer .......................................................................28

XII. GENERAL PROVISIONS.....................................................................................30

A. Indemnification ...............................................................................................30

B. No Implied Waivers .........................................................................................31

C. Waiver of Trial by Jury....................................................................................31

D. Dealer Not Agent or Representative................................................................31

E. Assignment......................................................................................................31

F. Expenses ..........................................................................................................32

G. Taxes ...............................................................................................................32

iv



# DEALER SALES AND SERVICE AGREEMENT
## <u>STANDARD PROVISIONS</u>

The following Standard Provisions have been made a part of and are incorporated by reference in the Mitsubishi Motors North America, Inc. Dealer Sales and Service Agreement and shall apply to and govern the transactions, dealings, and relations between MMNA and Dealer.

**I.     GENERAL OBLIGATIONS**

The purpose of *this Agreement* is to provide for the sale and servicing of *MMNA Products* in a manner that will best serve the interests of **MMNA, Dealer**, other *Authorized MMNA Dealers*, and the owners and purchasers of *MMNA Products*.

**Dealer** has entered into *this Agreement* with confidence in **MMNA's** integrity and expressed intention to deal fairly with **Dealer** and the consuming public of *MMNA Products* and services. **MMNA** has entered into *this Agreement* with confidence in **Dealer's** integrity, ability and expressed intention to deal fairly with **MMNA**, other *Authorized MMNA Dealers*, and the consuming public of *MMNA Products* and services and with reliance upon **Dealer's** undertaking to perform and carry out the duties, obligations and responsibilities of an *Authorized MMNA Dealer* as set forth in *this Agreement*.

**Dealer** shall engage in no discourteous, deceptive, misleading or unethical practices and shall actively promote the sale of *MMNA Products*.  **Dealer** shall give prompt, efficient and courteous service to all customers of *MMNA Products* whether or not those customers purchased *MMNA Products* from **Dealer**.

**MMNA** will actively assist **Dealer** in all aspects of **Dealer's** MMNA dealer operations.  **MMNA** shall offer suggestions and provide materials designed to assist **Dealer** and its personnel, conduct periodic annual evaluations of **Dealer's** premises, performance and facilities as described in Section VII.B.1. hereof, and provide special training programs for the active participation of **Dealer** and its sales, service and parts personnel.

**II.     DEFINITIONS**

As used in *this Agreement*, the following terms shall have the meanings indicated:

A.     **MMNA** shall mean Mitsubishi Motors North America, Inc., a California corporation which is the authorized distributor in the United States of *MMNA Products*.

B.     *MMNA VEHICLE* shall mean any new passenger car or truck with a *Gross Vehicle Weight Rating* of under 7,000 pounds (whether or not manufactured or supplied by MMC) distributed in the United States by **MMNA** and set forth in the *Product List*.

C.     *MMNA PARTS AND/OR ACCESSORIES* shall mean genuine new parts, components and accessories, designed primarily for use on *MMNA Vehicles* and distributed by **MMNA**.

D.     *MMNA PRODUCTS* shall mean *MMNA Vehicles*, *MMNA Parts and Accessories*, and other new products (whether or not manufactured or supplied by MMC) which from time



1

to time may be offered by **MMNA** to **Dealer** under *this Agreement*.

E.     *MMNA TRADEMARKS* shall mean the trademarks, service marks, design marks and trade names which are used by **MMNA** in connection with *MMNA Products*, including, without limitation, the names "Mitsubishi" and "**MMNA**," and the Mitsubishi three-diamond logo.

F.     *MMC* shall mean Mitsubishi Motors Corporation, a Japanese corporation which manufactures or supplies to **MMNA** some or all of the *MMNA Vehicles*.

G.     *AUTHORIZED MMNA DEALER OR MMNA DEALER* shall mean any dealer located in the United States authorized by **MMNA** to conduct dealership operations in connection with the sale of *MMNA Products* pursuant to an MMNA Dealer Sales and Service Agreement.

H.     *OWNERS* shall mean the persons named in Section 3 of the MMNA Dealer Sales and Service Agreement.

I.     *EXECUTIVE MANAGERS* shall mean the persons named in Section 4 of the MMNA Dealer Sales and Service Agreement.

J.     *DEALERSHIP PREMISES* shall mean the place or places of business established by **Dealer** and approved by **MMNA** in accordance with Section 6 of the MMNA Dealer Sales and Service Agreement.

K.     *DEALERSHIP FACILITIES* shall mean the buildings and other improvements on the *Dealership Premises* provided by **Dealer** in accordance with requirements set forth in the *Dealer Development Plan*.

L.     *DEALER DEVELOPMENT PLAN* shall mean the written development plan, as amended from time to time by **MMNA**, setting forth the criteria relied upon by **MMNA** to determine initially whether **Dealer** qualifies for appointment as an *MMNA Dealer* and thereafter to evaluate whether **Dealer's** performance hereunder qualifies **Dealer** for renewal(s) of its MMNA dealership.

M.     *GROSS VEHICLE WEIGHT RATING* shall mean the value specified by the manufacturer of *MMNA Vehicles* as the loaded weight of a single vehicle.

N.     *SALES LOCALITY* shall mean the locality which is designated in Section 5 of the MMNA Dealer Sales and Service Agreement as the primary area of **Dealer's** sales and service responsibility for *MMNA Products*.

O.     *WARRANTY MANUAL* shall mean the MMNA Warranty Policy and Procedure Manual, as the same may be amended from time to time by MMNA, which sets forth policies and procedures concerning warranties on *MMNA Products*.

P.     *PRE-DELIVERY INSPECTION MANUAL* shall mean the MMNA Pre-delivery Inspection Procedures Manual, as the same may be amended from time to time by MMNA, which sets forth MMNA policies and procedures concerning the servicing of *MMNA Vehicles* prior to their delivery to purchasers of *MMNA Vehicles*.

Q.     *INVOICE PRICE* shall mean, with respect to each *MMNA Product* to which it refers, the price to **Dealer** for such product as from time to time established by **MMNA**.

2



R.    *PARTS DISCOUNT AND PURCHASE TERMS SCHEDULE* shall mean a listing of the terms, discounts and conditions relating to the purchase of *MMNA Parts and Accessories* supplied by **MMNA** to **Dealer**, as amended from time to time by **MMNA**.

S.    *MMNA MASTER PARTS PRICE LIST* shall mean a listing of the suggested list prices and the prices of *MMNA Parts and Accessories* issued by **MMNA** from time to time.

T.    *POLICY REVIEW BOARD* shall mean the MMNA Policy Review Board described in Section XI hereof.

U.    *THIS AGREEMENT* shall mean the Mitsubishi Motors North America, Inc. Dealer Sales and Service Agreement, all schedules thereto, these Standard Provisions, the *Warranty Manual* and the *Dealer Development Plan*, the most recent *Product List* and all *Product Addenda*, each as amended from time to time, and all other guides, bulletins or directives issued from time to time by **MMNA** to *MMNA* Dealers.

V.    *PRODUCT LIST* shall mean a list of *MMNA Products* distributed by **MMNA** which shall be provided to **Dealers** and amended or supplemented by **MMNA** from time to time.

W.    *PRODUCT ADDENDUM or ADDENDA* shall mean any addendum to *this Agreement* which **MMNA** may issue to **Dealers** from time to time setting forth special terms and conditions governing the sale or servicing only of the particular vehicles or products designated in the *Product Addendum*.

## III.    SALES OF MMNA PRODUCTS TO DEALER

### A.    Orders

**Dealer** shall submit to **MMNA** firm orders for *MMNA Products* in such quantity and variety as are necessary to fulfill **Dealer's** obligations under *this Agreement*. **Dealer** agrees to submit current orders and estimated projections of **Dealer's** future requirements for *MMNA Products* at such times and for such periods as **MMNA** may reasonably request. **Dealer** will submit all orders and projections in the format prescribed by **MMNA**.

All orders are subject to acceptance by **MMNA**. **MMNA** is under no obligation to accept orders from **Dealer** and may accept any order in whole or in part. Acceptance of any order may be by oral or written notice to **Dealer** or by shipment of the *MMNA Products* ordered.

No order may be cancelled by **Dealer** and each order shall remain binding upon **Dealer** unless rejected in writing by **MMNA**.

Except as otherwise provided herein, **MMNA** agrees to ship *MMNA Products* to **Dealer** only on **Dealer's** orders. **MMNA** will use its best efforts to fill any orders which it has accepted, but nothing contained in *this Agreement* shall obligate **MMNA** to deliver to **Dealer** any particular number of *MMNA Vehicles* or *MMNA Parts and Accessories*.

### B.    Deliveries

1.    Mode and Place of Delivery



3

**MMNA** shall select the distribution points, carriers and modes of transportation in effecting delivery of *MMNA Products* to **Dealer**. **Dealer** agrees to reimburse **MMNA** for any delivery, freight, handling and other charges which appear on **MMNA's** invoice to **Dealer**.

2. Diversion of Deliveries

If **MMNA** is required to divert any *MMNA Product* ordered by **Dealer** because of **Dealer's** failure or refusal to accept such product, **Dealer** agrees to assume responsibility for and pay any charges incurred by **MMNA** as a result of such diversion including, without limitation, charges incurred by **MMNA** in returning any such product to the point of original shipment or other distribution point selected by **MMNA**, plus all charges for demurrage or storage related to such diversion.

3. Delay or Failure to Deliver

**MMNA** shall not be liable for delay or failure to fill orders that have been accepted, where such delay or failure is the result of any domestic or foreign laws, regulations, ordinances, rules, orders or other governmental requests, acts of God, foreign or civil wars, riots, interruptions of navigation, shipwrecks, fires, strikes, lockouts or other labor troubles, embargoes, blockades, delay or failure of *MMC*, other suppliers of **MMNA** or any carrier to deliver *MMNA Products*, or any other event whether similar or dissimilar to the foregoing which is beyond the reasonable control of **MMNA**.

4. Damage Claims Against Carriers

Unless otherwise specified in the *Warranty Manual*, **MMNA** agrees, upon request by **Dealer**, to assist **Dealer** in recovery against any carrier for loss or damage to *MMNA Products* shipped hereunder.

**C.   Prices and Other Terms of Sales**

1. Price Changes

**MMNA** reserves the right, without prior notice to **Dealer**, to change prices, charges and terms of purchase of all *MMNA Products* sold under *this Agreement* and, except as provided in Section III.C.7. hereof, **Dealer** or its customers shall have no right of cancellation or to any refund or credit with respect thereto. **MMNA** will charge **Dealer** for *MMNA Products* according to the prices, charges and terms of purchase in effect on the date of shipment. Prices, charges and terms of purchase for *MMNA Parts and Accessories* shall be established from time to time by **MMNA** in the *MMNA Master Parts Price List* and in the *Parts Discount and Purchase Terms Schedule*.

2. Payment for ***MMNA Vehicles***

Unless otherwise permitted by **MMNA** in writing, payment for *MMNA Vehicles* shall be by cash draft issued prior to shipment of each *MMNA Vehicle* from its port of entry against **Dealer's** then applicable wholesale credit line, which line shall be approved by **MMNA** and established in **Dealer's** name with a financial institution acceptable to **MMNA**. The minimum amount of such credit line must be expressly approved by **MMNA** and must be sufficient to meet **MMNA's**

4



estimate of **Dealer's** anticipated sales volume, as the same may be revised from time to time in the *Dealer Development Plan*.

**MMNA** may find it necessary, from time to time, to advise **Dealer** that the amount of available credit required of **Dealer** must be increased. Such decisions will be based upon criteria reasonably established by **MMNA**, including the sufficiency of the existing credit line and anticipated increases in sales. **Dealer** agrees to cooperate fully with **MMNA** and to arrange promptly for all required changes in its financial arrangements.

3.      Payment for *MMNA Products* other than *MMNA Vehicles*

**MMNA** will invoice **Dealer** for all *MMNA Products* other than *MMNA Vehicles* purchased by **Dealer**. Payment for invoices shall be due by the tenth (10th) day of the month following the month in which the products covered by the invoice are delivered. **MMNA** reserves the right, at any time with or without notice to **Dealer**, to place any and all sales of *MMNA Products* other than *MMNA Vehicles* on a C.O.D. basis, cash in advance basis or otherwise alter the credit terms available to **Dealer**. **Dealer's** right to return *MMNA Products* (other than *MMNA Vehicles*) shall be governed by the terms and provisions set forth in the *Parts Discount and Purchase Terms Schedule*.

4.      Failure of Financing Arrangements

It is **Dealer's** sole responsibility to institute appropriate controls to ensure the uninterrupted availability of sufficient funds under its approved credit line with **Dealer's** financial institution. Should **Dealer** fail to pay for, or should any applicable financing arrangement fail to provide credit for the payment of, any *MMNA Products* ordered by **Dealer** when payment is due therefor, **MMNA** may, with respect to any such *MMNA Products* (i) cause the same to be stored at the sole risk and expense of **Dealer**; or (ii) cause such *MMNA Products* to be shipped elsewhere (including returning the same to **MMNA**) and **Dealer** shall pay to **MMNA** promptly upon demand all expenses sustained by **MMNA** in storing, handling and shipping occasioned thereby; or (iii) without obligation to pay any sum to **Dealer**, sell such *MMNA Products* directly to any other *MMNA Dealer*, person, firm or corporation, all expenses or losses occasioned thereby to be borne by **Dealer**.

In addition to the foregoing, in the event of an oral or written refusal by **Dealer's** financing institution to make payment against drafts for any *MMNA Vehicle* ordered by **Dealer**, **MMNA** may impose a fixed administrative charge for each *MMNA Vehicle* refused. The amount of such charge, which shall be in addition to otherwise applicable delivery, storage and demurrage charges, shall reflect a reasonable estimate of the average administrative cost incurred by **MMNA** in arranging for alternative disposition of the *MMNA Vehicle* so refused. Furthermore, any failure of **Dealer's** financial institution to maintain for a period of sixty (60) or more days the unrestricted availability to **MMNA** of **Dealer's** credit line in an amount and in accordance with the terms approved by **MMNA** shall constitute grounds for termination of *this Agreement* under Section X.B.2.(f) hereof. "Unrestricted availability" as used in this section shall mean that upon



presentment of **MMNA's** drafts to **Dealer's** financial institution as contemplated hereunder, no approval of **Dealer**, the financial institution itself or any other party will be required before payment to MMNA is made.

5.      Title and Risk of Loss

Title and risk of loss or damage to any *MMNA Product* sold to **Dealer** shall pass to **Dealer** upon (i) its delivery to **Dealer**, (ii) its delivery to a common carrier for delivery to **Dealer**, or (iii) receipt by **MMNA** of payment therefor, whichever shall first occur.   **MMNA** shall retain, and **Dealer** hereby grants to **MMNA**, a security interest in, and the right to retain or repossess, all *MMNA Products* sold to **Dealer** by **MMNA** until **MMNA** is paid in full therefor.

6.      Collection of Indebtedness

**Dealer** agrees to execute and deliver and shall, where appropriate, cooperate with **MMNA** in causing to be filed with the appropriate authorities any and all statements and documents required or permitted by the Uniform Commercial Code and any other local laws for the protection of unpaid sellers.

**Dealer** agrees that **MMNA** may apply toward payment of any amount due **MMNA** from **Dealer** any credit owed to **Dealer** by **MMNA**, and **MMNA** may, at its option, collect any sums owed by **Dealer** to **MMNA** by making a separate draft or by including any such sums in any draft issued for the sale of *MMNA Products* sold under *this Agreement*.   **Dealer** will pay the amount of each draft and all exchange and collection charges.   In addition, **MMNA** may impose an interest charge for balances thirty (30) days or more overdue.   Such charge shall be assessed at the maximum rate permitted by law.   The foregoing rights of **MMNA** are in addition to, and not in lieu of, any rights or remedies it may have by law as an unpaid seller.

7.      Refunds

Should **MMNA** reduce the *Invoice Price* of any *MMNA Vehicle* then in current production, **MMNA** will give written notice of such reduction to **Dealer** and will refund to **Dealer** an amount equal to the difference between any higher price paid by **Dealer** for such *MMNA Vehicles* and the reduced price.   Such refunds will be payable only for *MMNA Vehicles* actually purchased by **Dealer** at a price higher than the reduced price and which are new and unsold by **Dealer** on the effective date of the price reduction set forth in **MMNA's** notice thereof.   To be entitled to such refund, **Dealer** must, within thirty (30) days after receipt of notice of the price reduction, make written claim therefor supported by evidence satisfactory to **MMNA**.

**MMNA** shall have no obligation to make refunds or give credits with respect to:

a.      Any *MMNA Vehicle* used as a demonstrator and not promptly registered with **MMNA** by **Dealer** when assigned to demonstrator use;

b.      Any reduction in the amount of **MMNA** charges for distribution and delivery, or taxes;

c.      Any reduction in the amount of any contribution or any other sum for advertising or sales promotion; or

6



d.     Any reduction by **MMNA** in the suggested retail price *or Invoice Price* established by **MMNA** by reason of any law, order, or regulation of any government or any governmental agency.

**MMNA** reserves the right to pay refunds to any financial institution which has financed the purchase of, and retains a lien or ownership interest in, any *MMNA Vehicle* for which application for refund or credit is made by **Dealer**.

**D.     Product Warranties**

**Dealer** understands and agrees that the only warranties applicable to each new *MMNA Product* sold to **Dealer** by **MMNA** shall be the written warranty or warranties expressly furnished by **MMNA** or by the manufacturer of the *MMNA Product* and as stated in the *Warranty Manual*.   Anything in *this Agreement* to the contrary notwithstanding, all warranties made by **MMNA** as set forth in the *Warranty Manual* shall survive and, in accordance with their respective terms, continue in full force and effect, despite any expiration or termination of *this Agreement* pursuant to Section X hereof.

**E.     Change of Design, Options or Specifications**

**MMNA** reserves the right, at any time, to make changes in or discontinue the supply of any design or specification of *MMNA Products* (regardless of whether such products are *MMNA Vehicles*, *MMNA Parts and Accessories* or options), without notice to **Dealer** and, unless required by law, without obligation to make any changes with respect to *MMNA Vehicles* and *MMNA Parts and Accessories* or options previously delivered to **Dealer** or being imported, manufactured, or sold in accordance with **Dealer's** orders.   No change shall be considered a model year change unless so specified by **MMNA**.   Except as specifically provided in Section III.C.7. hereof, **MMNA** shall be under no liability to **Dealer** on account of any discontinuance or change and shall have no obligation to **Dealer** to make any refund on *MMNA Products* previously purchased by **Dealer**, whether or not the price of *MMNA Products* previously sold by **MMNA** is affected thereby.   Unless directed in writing by **MMNA** or required to do so by law, **Dealer** shall not alter any *MMNA Product* or change or substitute any of its components as sold by **MMNA**, except for minor or cosmetic changes which do not affect the mechanical operation, safety or structural integrity of any *MMNA Product*.

**F.     Vehicles Excluded**

**Dealer** acknowledges that *this Agreement* confers no rights or benefits with respect to vehicles or products of any kind not distributed by **MMNA**, and that **Dealer's** right to purchase *MMNA Vehicles* from **MMNA** shall at all times be limited to those *MMNA Vehicles* listed on the most recent *Product List*.   Without limiting the generality of the foregoing, **Dealer** acknowledges that: (1) *MMC* distributes in the United States trucks with a *Gross Vehicle Weight Rating* of 7,000 pounds or more, truck tractors, buses, other heavy vehicles, and parts and accessories therefor through a distribution company known as Mitsubishi Fuso Truck America, Inc. ("**MFTA**"); (2) *this Agreement* confers no right upon **Dealer** to purchase for resale or lease, sell service or lease **MFTA** vehicles or products; (3) **MFTA** vehicles are of a separate "line make" from *MMNA Vehicles*; and (4) *this Agreement* confers no right upon **Dealers** to protest, object or invoke any other



7

administrative or judicial process to bar or delay the establishment of any **MFTA** dealership within or without **Dealer's** *Sales Locality*.

## IV.   DEALERSHIP PREMISES

### A.   Responsibilities of Dealer

**MMNA** and **Dealer** recognize the importance of establishing an effective network of qualified *Authorized MMNA Dealers* meeting **MMNA's** established standards. Accordingly, **Dealer** agrees that it shall not, under any circumstances, establish an associate dealer or subdealer for *MMNA Products* or establish any MMNA dealership premises or operations other than those expressly approved by **MMNA**. **Dealer** agrees to operate its MMNA dealership only on *the Dealership Premises*, and to provide and utilize the *Dealership Facilities* only in accordance with standards established by **MMNA** set forth in the *Dealer Development Plan*. **Dealer** recognizes that if it engages in other business activities in the *Dealership Facilities* and/or on the *Dealership Premises*, the physical facilities necessary for the sale and servicing of *MMNA Products* may be adversely affected. Accordingly, **Dealer** agrees that it shall not modify, relocate, change the usage of, reduce or expand the *Dealership Premises* or the *Dealership Facilities* without first consulting with **MMNA** and obtaining its written approval of such changes.

### B.   Automobile Leasing or Rental Business

**Dealer** may, as part of their MMNA dealership operations, engage in the leasing of *MMNA Vehicles* at the *Dealership Premises* so long as **Dealer** complies fully with all standards and requirements established by **MMNA** in connection therewith. **Dealer, its** *Owners* and *Executive Managers* shall not, however, without the prior written consent of **MMNA**, form or acquire, directly or indirectly, a separate legal entity for the purpose of conducting such leasing operations, whether within or without the *Dealership Premises.* Nor shall **Dealer,** its *Owners* and *Executive Managers* acquire for themselves or for members of their respective families any substantial interest in such separate business without the prior written consent of **MMNA**. If **MMNA** consents to the operation or substantial ownership of such separate leasing business by **Dealer**, its *Owners, Executive Managers* or their respective families, such business shall be subject to the provisions of Section IV.C. hereof.

### C.   Related Activities of Dealer or  Dealer's Owners or Executive Managers

If **Dealer** or any of **Dealer's** *Owners* or *Executive Managers* should have or should acquire, directly or indirectly, for themselves or for members of their respective families, any substantial interest in an enterprise the business of which is in any way connected with new or used *MMNA Products* (hereinafter referred to as "Related Business"), or any property which is being used or will be used in connection with new or used *MMNA Products* (hereinafter referred to as "Related Property"), or any beneficial interest in any Related Property, **Dealer** will:

1.   At the time *this Agreement* is executed by **Dealer**, or immediately upon such acquisition, whichever may be later, require such Related Business or the holder of legal title or beneficial interest in the Related Property to execute and deliver to **MMNA** a written instrument in which such Related Business or holder shall assume the following obligations:

   a.   To refrain from all conduct which might be harmful to the goodwill of

8



**MMNA** or to the reputation of *MMNA Products* or which might be inconsistent with the public interest;

b.   To grant to **MMNA**, until the expiration or prior termination of *this Agreement*, the right, through **MMNA's** employees and other designees, to inspect, at all reasonable times during regular business hours, the premises, as well as the records and accounts, of such Related Business or holder; and

c.   To refrain from any use of any *MMNA Trademark.*

2.   Furnish to **MMNA**, at the time *this Agreement* is executed by **Dealer** or immediately upon such acquisition, whichever may be later, a written report setting forth in detail:

a.   The ownership of beneficial interests in such Related Business or Related Property; and

b.   The business activities of such Related Business and the use of such Related Property including, among other things, the names of all *Authorized MMNA Dealers* with which such Related Business has any dealings or who use or have any interest in such Related Property, and the terms of such dealings, use and interests.

3.   In the event of any change in the ownership, activities or use of the Related Business or Related Property, furnish to **MMNA** a written report setting forth the details of such change.

4.   Furnish to **MMNA** such other reports concerning the Related Business or Related Property as **MMNA** may from time to time require.

**D.   Personnel**

**Dealer** agrees that it will employ qualified personnel in such capacities and in such number as may be specified in the *Dealer Development Plan* or as otherwise required by **MMNA**.

**E.   Insurance**

**Dealer** shall obtain fire and casualty insurance issued by an insurer of recognized responsibility satisfactory to **MMNA**, with coverage for each occurrence and in an aggregate amount acceptable to **MMNA**, and providing coverage for, among other things, death, bodily injury and property damage claims which may arise in connection with **Dealer's** operations.   Such insurance shall be maintained in full force and effect at **Dealer's** sole cost throughout the term of *this Agreement* and all extensions or renewals hereof.



9

**F.    Maintaining Operations Open for Business**

Since the transportation and maintenance needs of customers served by **Dealer** can be properly met only if **Dealer** keeps the *Dealership Premises* open for business, dealer agrees to maintain its dealership operations open for business during all days and hours which are customary and lawful for such operations in the community or locality in which the *Dealership Premises* are located.  Any unexcused failure to remain open for business during such hours in excess of five (5) consecutive business days shall constitute grounds for termination of *this Agreement* under Section X.B.1.(a) hereof.

**G.    Minimum Vehicle Inventories**

Subject to the ability of **MMNA** to supply *MMNA Vehicles* ordered by **Dealer**, **Dealer** agrees that it shall, at all times, maintain the minimum inventory of *MMNA Vehicles* for immediate sale as set forth in the *Dealer Development Plan* from time to time by **MMNA** after consultation with **Dealer**.  **Dealer** also agrees that it shall have available at all times, for purposes of showroom display and demonstration, the number of current models of *MMNA Vehicles* required of **Dealer** as determined from time to time by **MMNA** after consultation with **Dealer**.  **Dealer** agrees to maintain all *MMNA Vehicles* in excellent condition at all times.  Failure of **Dealer** to maintain the required minimum number of *MMNA Vehicles* shall constitute grounds for termination of *this Agreement* under Section X.B.2.(n) hereof.

**Dealer** recognizes that it is the goal of all *MMNA Dealers* to meet efficiently the needs of all customers of *MMNA Products* wherever located and that, although an *MMNA Dealer* may attempt to continually maintain its minimum inventory, occasionally its customers may request a specific *MMNA Vehicle* or *MMNA Part or Accessory* which is not currently in stock.  Accordingly, **Dealer** agrees to use its best efforts to cooperate with other *MMNA Dealers* by providing them with access to information regarding its parts and *MMNA Vehicle* inventory and whenever possible, trading its *MMNA Products* to satisfy the needs of a customer of another *MMNA Dealer.*

**H.    Signs**

Subject to applicable governmental ordinances, regulations and statutes, **Dealer** agrees to buy or rent from **MMNA** or from sources designated by **MMNA** and to erect and maintain on the *Dealership Premises*, entirely at **Dealer's** expense, authorized sales and service signs conforming to the requirements established and approved for **Dealer's** use by **MMNA**.  **Dealer** further agrees to obtain and maintain any licenses or permits necessary to erect such signs.  Failure to obtain, erect, maintain, repair, illuminate and prominently display such signs in a manner approved by **MMNA** shall constitute grounds for termination of *this Agreement* under Section X.B.2.(j) hereof.

**I.    Electronic Communications System**

**MMNA** has elected to implement an electronic data processing system to facilitate communications between **MMNA** and each *MMNA Dealer*.  Such a system is designed to enable each **MMNA Dealer** to electronically transmit current information regarding its sales and service operations, including without limitation, orders for *MMNA Vehicles* and *MMNA Parts and Accessories*, sales reports, and warranty claims data.  In recognition of the benefits of such a system, **Dealer** agrees to acquire and install, at its sole expense, on the *Dealership Premises* a dealer computer terminal approved by **MMNA** and to utilize the system in accordance with **MMNA's** instructions.

10



J.     **Planning Assistance for Dealership Premises**

To assist **Dealer** in planning, establishing and maintaining the *Dealership Premises*, **MMNA** will, if feasible, make available to **Dealer** upon request, copies of sample building layout plans, facility planning recommendations and an identification program covering the placement, installation and maintenance of recommended signs.  In addition, representatives of **MMNA** will be available to **Dealer** from time to time to advise **Dealer** and dealership personnel in connection with **Dealer's** planning of the *Dealer Facilities* and *Dealership Premises*.

## V.     NET WORKING CAPITAL

**Dealer** agrees to establish and maintain net working capital in an amount not less than the minimum net working capital agreed upon by  **Dealer** and **MMNA** and specified in the *Dealer Development Plan*.  If, because of changed conditions, **MMNA** deems it necessary to increase or decrease the minimum amount of  **Dealer's** net working capital, the minimum net working capital required of **Dealer** under the *Dealer Development Plan* may be revised by **MMNA** after consultation with **Dealer**.  If the amount thereof is increased, **Dealer** agrees to meet the new minimum net working capital standard within the time period reasonably prescribed by **MMNA** after consultation with **Dealer**.

## VI.     ACCOUNTS, RECORDS AND REPORTS

A.     **Uniform Accounting System**

It is for the mutual benefit of **Dealer** and **MMNA** that uniform accounting systems and practices be maintained by all *Authorized MMNA Dealers*.  Accordingly, **Dealer** agrees to maintain such systems and practices as designated by **MMNA** in accordance with the uniform accounting system and practices established by **MMNA** for use by all *MMNA Dealers*.  **Dealer** agrees that it will furnish to **MMNA** by the tenth (10th) day of each month, in the form prescribed by **MMNA**, true, complete and accurate financial and operating statements covering the preceding month and showing calendar-year-to-date operations.

B.     **Sales Reporting**

To assist in the evaluation of current market trends and other matters, **Dealer** agrees to:

1.     Immediately upon delivery of an *MMNA Vehicle* to the purchaser thereof, complete and transmit to **MMNA** a report of the retail sale called the "Retail Delivery Report"; and

2.     Furnish **MMNA** with such other reports or records which may reasonably be required by **MMNA**.

C.     **Sales and Service Records**

**Dealer** agrees to keep complete, accurate and current records regarding the sale and servicing of *MMNA Products*.  In order that policies and procedures relating to applications for reimbursement for warranty and policy work may be applied uniformly to



11

all *Authorized MMNA Dealers*, **Dealer** agrees to prepare, keep current and retain records in support of requests for reimbursement for warranty and policy work performed by **Dealer** in accordance with the policies and procedures prescribed in the *Warranty Manual* and standards established by **MMNA** consistent with said manual.

D.   **Examination of Accounts and Records**

**Dealer** agrees that it will permit **MMNA** to make examinations and audits of its accounts and records at any time during regular business hours, and in connection therewith, to reproduce and take for its own use copies of **Dealer's** records including, without limitation, records supporting requests for reimbursement for warranty and policy work performed or to be performed by **Dealer**. A report of any such examination will be furnished to **Dealer**. Failure to allow authorized personnel of **MMNA** to examine, audit, reproduce and take copies for **MMNA's** use of **Dealer's** records, whether or not located at the *Dealership Premises*, shall constitute grounds for termination of *this Agreement* under Section X.B.2.(m) hereof.

VII.   **PROMOTING AND SELLING MMNA PRODUCTS**

A.   **Responsibilities of Dealer**

**Dealer** agrees to use its best efforts to promote, sell and service *MMNA Vehicles* and *MMNA Parts and Accessories* in the *Sales Locality*. **Dealer** recognizes that **Dealer's** fundamental obligation under *this Agreement* is to stock, sell and service all models and types of *MMNA Vehicles* distributed in the *Sales Locality* by **MMNA**. Accordingly, **Dealer** expressly assumes responsibility for fulfilling this obligation, and in connection therewith, **Dealer** expressly agrees to develop that sales volume necessary to meet **Dealer's** Minimum Sales Responsibility as outlined in *this Agreement* and is more particularly described in the *Dealer Development Plan*.

B.   **Sales and Performance Criteria**

1.   *Dealer Development Plan*

The parties hereto shall periodically, and in any event at least annually, review **Dealer's** performance under *this Agreement*. **Dealer's** performance will be evaluated on the basis of the performance criteria set forth in the *Dealer Development Plan*, which criteria shall include such factors as maintenance of facilities, service and sale of *MMNA Parts and Accessories* and sales performance.

During each such periodic review, **MMNA** shall note in writing any deficiencies it finds in **Dealer's** performance and operations, and **MMNA** will offer suggestions for the improvement thereof. **MMNA** shall give **Dealer** a reasonable opportunity to implement its suggestions and take other steps necessary to cure deficiencies in **Dealer's** performance. **Dealer** agrees to cooperate with **MMNA** during such evaluation and to furnish any data regarding the **Dealer's** operations which may reasonably be requested by **MMNA**. **Dealer** agrees that it will use its best efforts to meet the performance standards established from time to time by **MMNA** and to cure any deficiencies set forth in its *Dealer Development Plan*. Failure by **Dealer** to correct such deficiencies after having had a reasonable opportunity to do so shall constitute grounds for termination of *this Agreement* under Section X.B.3.(a) hereof.

12



2.    Determination of Minimum Sales Responsibility

If **Dealer** is the only *MMNA Dealer* located in the *Sales Locality*, calculation of **Dealer's** Minimum Sales Responsibility will be based upon the ratio of sales and registrations of *MMNA Vehicles* to sales and registrations of competitive vehicles and *MMNA Vehicles* in *the Sales Locality*. In metropolitan markets where multiple *MMNA Dealers* are located, **Dealer** (together with all other *MMNA Dealers* in the *Sales Locality*) will be assigned a percentage share of responsibility for total sales performance in the *Sales Locality* based upon **Dealer's** trading area. **MMNA** may from time to time change the size and/or boundaries of **Dealer's** trading area after appropriate analyses of new car purchasing patterns in the *Sales Locality*. Such trading areas will be used solely for the purpose of determining the percentage of sales responsibility assigned to **Dealer** and should not be interpreted as a market area assigned to **Dealer**. In evaluating **Dealer's** performance, **MMNA** will consider recent trends in **Dealer's** sale performance and any special local conditions which would uniquely affect **Dealer's** performance.

To the extent that **MMNA** for any reason, other than **Dealer's** failure to submit orders or arrange payment, delivers to **Dealer** less than the number of new *MMNA Vehicles* that represents **Dealer's** Minimum Sales Responsibility, **Dealer's** Minimum Sales Responsibility set forth in the *Dealer Development Plan* will be reduced accordingly.

The term "competitive vehicles" as used in this section shall mean those new vehicles which are from time to time designated by **MMNA** as competitive with *MMNA Vehicles*. The term "**Dealer's** trading area" as used in this section shall mean an area immediately surrounding the *Dealership Premises* which is determined by **MMNA** from time to time based upon an analysis of census tracts or other geographical boundaries.

C.    **Sales Operations**

1.    Sales Organization

To enable **Dealer** to fulfill satisfactorily its responsibilities under *this Agreement*, Dealer agrees to organize and maintain the minimum number of trained sales and customer relations personnel required by **MMNA** in the *Dealer Development Plan*.

2.    Representations in the Sale of *MMNA Vehicles*

**Dealer** agrees that it will sell all *MMNA Vehicles* in accordance with directives issued by **MMNA** designating model and model year classifications and will not make any misleading statements or misrepresentations regarding *MMNA Products*, including without limitation, selling as new any *MMNA Vehicle* which is not in fact new and unused, misrepresenting the model year or year of manufacture, or the items or prices of the items making up the total selling price of any *MMNA Vehicle*. Dealer shall not make any statements tending to lead any customer to believe that a greater portion of the selling price of an *MMNA Vehicle*



13

represents destination charges and/or factory handling charges than the amounts of such items actually charged to and paid for by **Dealer**.

3.    Customer Deposits

**Dealer** will hold in trust until completion of sale any down payment and all other property it may receive from customers in connection with their purchases of *MMNA Products*. **Dealer** will not sell or place any lien on any property taken as a trade-in unless at the same time it segregates and holds in trust an amount equal to the trade-in allowance agreed upon with the customer for such property until completion of the sale for which such property was taken as a trade-in. **Dealer** will ensure that all purchase order forms signed by its customers contain provisions binding **Dealer** to hold all down payments and other property in the manner specified in this section.

**D.    Advertising**

1.    Misleading Advertising

Both **MMNA** and **Dealer** recognize the need for maintaining standards of ethical advertising of a quality and dignity consonant with the reputation and standing of *MMNA Products* in order to maintain public confidence in, and respect for, **Dealer**, **MMNA** and *MMNA Products*. Accordingly, neither **MMNA** nor **Dealer** will publish or cause or permit to be published any advertising relating to *MMNA Products* likely to mislead or deceive the public or to impair the goodwill of **MMNA** or **Dealer** or the reputation of *MMNA Products*. **Dealer** shall, promptly upon written notice from **MMNA**, discontinue any advertising which **MMNA**, in its sole judgment, considers may be injurious to **Dealer's** or **MMNA's** business, or to the reputation of *MMNA Products*, or likely to mislead or deceive the public, or at variance with the business, advertising or public relations policies of **MMNA**.

2.    **MMNA** Dealer Advertising Association

**MMNA** and **Dealer** recognize the benefits which may be derived from a comprehensive joint advertising effort *MMNA Dealers*. Accordingly, **MMNA** agrees to assist *MMNA Dealers* in the formation and effective operation of such cooperative dealer advertising association. **Dealer** agrees to cooperate with **MMNA** in the establishment of such a group and, once it is established, to participate actively and contribute to it in accordance with the bylaws of the association.

The **MMNA** dealer advertising association will finance its advertising programs through the assessment of a fixed charge for each new *MMNA Vehicle* purchased by member *MMNA Dealers*. As a service to the dealer association, **MMNA** will collect the agreed upon charge, provided that the dealer association maintains control over both the amount of the assessment and the manner in which such funds will be expended.

3.    Dealer Cooperative Promotional Fund

**MMNA** will establish and maintain general advertising programs and will make sales promotion and campaign materials available to **Dealer** to promote the sale of *MMNA Vehicles*. **Dealer** recognizes that it will benefit from the simultaneous

14



use by all *Authorized MMNA Dealers* of new model announcement literature, catalogs, banners and like materials and from the economies attendant upon preparation and purchase by **MMNA** of such basic sales promotion literature, parts and service manuals and other materials for all dealers. Accordingly, **Dealer** agrees to cooperate in **MMNA's** advertising programs and to fully utilize the materials offered **Dealer** by **MMNA**. **MMNA** sales promotion services will include the supply, at no additional cost to **Dealer**, of new model announcement and other sales promotion materials, and parts and service materials as described form time to time in **MMNA** sales letters. **Dealer** agrees to contribute to the cost of **MMNA's** sales promotion services an amount established by **MMNA** from time to time for each *MMNA Vehicle* sold by **MMNA** to **Dealer**. These amounts do not include the cost of special campaigns or special literature not described in **MMNA** sales letters.

E.    Assistance Provided by **MMNA**

   1.    Sales Training Assistance

To assist **Dealer** in the fulfillment of its responsibilities hereunder, **MMNA** shall offer general and specialized sales management and sales training courses for the benefit and use of **Dealer's** sales organization. **Dealer** understands the importance of having a well trained and knowledgeable staff in the successful operation of a dealership and, therefore, **Dealer** agrees to require the attendance of all its sales personnel at any special courses, meetings or training sessions offered for their benefit from time to time by **MMNA**. Whenever possible, **MMNA** will give **Dealer** thirty (30) days' advance notice of any such mandatory event so that all sales personnel may make arrangements to be present. Repeated failure by **Dealer's** sales personnel (including but not limited to management) to participate fully in such programs shall constitute grounds for termination of *this Agreement* under Section X.B.2.(l) hereof.

   2.    Field Sales Personnel

To assist **Dealer** in handling its sales responsibilities under *this Agreement*, **MMNA** agrees to provide field sales personnel from time to time to advise and counsel **Dealer** regarding merchandising, training and sales management.

VIII.    **SERVICING MMNA VEHICLES**

A.    Responsibilities of **Dealer**

**Dealer** agrees to provide service and parts to all *MMNA Vehicles* whether or not under warranty and whether or not the *MMNA Vehicle* to be serviced was purchased from **Dealer**.

   1.    Warranty Service

Warranty and policy service shall be performed in accordance with the *Warranty Manual* and any related bulletins and directives issued from time to time by **MMNA** to **Dealer**. **Dealer** shall furnish to the purchaser of each *MMNA Product*,



MITSUBISHI
MOTORS NORTH AMERICA, INC.

15

at the time each product is delivered, copies of any applicable warranties. **Dealer** shall be responsible for the timely submission of warranty claims in the format required by **MMNA**. **MMNA** agrees to compensate **Dealer** for all warranty and policy work in accordance with procedures and rates established from time to time by **MMNA** and in accordance with applicable law; and **Dealer** agrees that such rates shall constitute full and complete payment to **Dealer** for such work. **Dealer** agrees that where **MMNA** reimburses **Dealer** for warranty or policy work, the customer shall not be obligated to pay any charges for warranty or policy work except as required by law.

2.      New Motor Vehicle Pre-Delivery Service

**Dealer** agrees that prior to delivery of each new *MMNA Vehicle* to a retail customer, **Dealer** will conduct pre-delivery service and inspections in accordance with the *Pre-delivery Inspection Manual*. **Dealer** shall be reimbursed by **MMNA** for such pre-delivery service and inspection in accordance with procedures and rates established from time to time by **MMNA** and in accordance with applicable law.

3.      Free Maintenance

In accordance with directives to be issued from time to time by **MMNA**, certain maintenance services, excluding lubricant and oil filter costs, may be free of charge to the customer; if **Dealer** delivers an *MMNA Vehicle* to a customer pursuant to such directives, **Dealer** shall be reimbursed according to the terms of such directives. In the event that such free maintenance services are performed by another *MMNA Dealer* upon an *MMNA Vehicle* sold by **Dealer**, **Dealer** shall pay to such other *MMNA Dealer* the charge then in effect as established by **MMNA** for such maintenance services. Conversely, in the event that **Dealer** performs such free maintenance with respect to an *MMNA Vehicle* sold by another *MMNA Dealer*, **Dealer** shall be entitled to receive from such other *MMNA Dealer* the amount of such charge. All claims for payment for such charges by or against dealer shall be processed through **MMNA**. All such free maintenance services shall be performed in conformity with current service policies and practices outlined in service manuals, *the Pre-delivery Inspection Manual*, the *Warranty Manual* and warranty bulletins or technical service bulletins or directives issued from time to time by **MMNA**.

4.      Use of Parts

**Dealer** agrees not to use in the repair or servicing of *MMNA Vehicles* parts other than *MMNA Parts and Accessories* or other parts (including accessories) expressly approved by **MMNA** unless:

a.  the replacement parts are equivalent in quality and design to *MMNA Parts and Accessories* or parts expressly approved by **MMNA**; or

b.  the parts to be replaced are not necessary to the mechanical operation of the *MMNA Vehicle* and the replacement parts will not adversely affect the mechanical operation of the *MMNA Vehicle*.

Failure by **Dealer** to use *MMNA Parts and Accessories* or parts expressly approved by **MMNA** (or other parts equivalent thereto in quality and design) in

16



accordance with the requirements of this section shall constitute grounds for termination of *this Agreement* under Section X.B.2.(r) hereof. In the event of any dispute or litigation between **Dealer** and **MMNA** regarding the use by **Dealer** of parts other than *MMNA Parts and Accessories* or parts expressly approved. by **MMNA**, **Dealer** agrees that it shall have the burden of establishing either:

a. that parts used by it are equivalent in quality and design to *MMNA Parts and Accessories* or parts expressly approved by **MMNA**; or

b. that the parts replaced were not necessary to the mechanical operation of the *MMNA Vehicle* and the replacement parts would not adversely affect the mechanical operation of the *MMNA Vehicle*.

**Dealer** agrees that it will not represent or offer to sell as *MMNA Parts and Accessories*, or parts expressly approved by **MMNA**, any parts used by it in the repair or servicing of *MMNA Vehicles* which are not in fact genuine *MMNA Parts and Accessories*, or parts expressly approved by **MMNA**.

If **Dealer** uses parts for the service or repair of *MMNA Vehicles* which are not *MMNA Parts and Accessories* and which have not otherwise been approved in writing by **MMNA** for use in *MMNA Vehicles*, **Dealer** does so at its own risk and neither **MMNA** nor any manufacturer of *MMNA Products* will be responsible to **Dealer** or any third party for any products liability, warranty or other claim which may arise as a result of the installation and/or use of such parts and **Dealer** agrees to indemnify and hold **MMNA** and any manufacturer of *MMNA Products* harmless from any such claim or liability.

5.      Campaign Inspections and Corrections

**Dealer** agrees to perform campaign inspections and/or corrections for owners and users of all *MMNA Products* that qualify for such inspections and/or corrections, regardless of where or from whom such products were purchased. **Dealer** further agrees to comply with all procedures relating thereto set forth in the *Warranty Manual* and applicable bulletins, manuals, directives and technical data issued from time to time by **MMNA** to **Dealer**. **MMNA** agrees to reimburse **Dealer** for all replacement parts and/or other materials required and used in connection therewith and for labor in accordance with the applicable provisions of the *Warranty Manual* as supplemented by bulletins and directives issued from time to time by **MMNA** to **Dealers**. The term "campaign inspection and/or correction" as used in this section shall mean specially designated service operations initiated by **MMNA** to be performed by **Dealer** on specified vehicles.

6.      Compliance With Safety and Emission Control Requirements

**Dealer** agrees to comply with, and operate consistently with, all applicable provisions of the National Traffic and Motor Vehicle Safety Act of 1966, as amended, and the federal Clean Air Act, as amended, including applicable rules and regulations issued from time to time thereunder, and all other applicable federal, state and local motor vehicle safety and emission control requirements.



17

In the event that the laws of the state in which **Dealer** is located require motor vehicle dealers or distributors to install in new or used motor vehicles, prior to the retail sale thereof, any safety devices or other equipment not installed or supplied as standard equipment by **MMNA**, then **Dealer**, prior to its sale of any *MMNA Vehicles* on which such installations are so required, shall properly install such equipment on such *MMNA Vehicles*. **Dealer** shall comply with all state and local laws pertaining to the installation requirements of any such equipment including, without limitation, the reporting of such installation. **MMNA** shall not be liable for any failure of **Dealer** or its employees to comply with such state and local laws.

In the interests of motor vehicle safety and emission control, **MMNA** agrees to provide to **Dealer**, and **Dealer** agrees to provide to **MMNA**, such information and assistance as may reasonably be requested by the other in connection with the performance of obligations imposed on either party by the National Traffic and Motor Vehicle Safety Act of 1966, as amended, and the federal Clean Air Act, as amended, and the rules and regulations issued thereunder, and all other applicable federal, state and local motor vehicle safety and emission control requirements.

**B.    Service Operations**

1.    Service and Parts Organization

**Dealer** agrees to organize and maintain complete service and parts organization, including a qualified service manager, a qualified parts manager and the minimum number of competent service and parts personnel established by **MMNA** in the *Dealer Development Plan*.

2.    Paint and Body Facilities

If permissible under local governmental ordinances, regulations and statutes, **Dealer** will use its best efforts to provide paint and body facilities for *MMNA Vehicles*. Such facilities will be subject to **MMNA's** prior written approval and, once approved, shall become part of the *Dealership Premises* and subject to the terms and conditions of *this Agreement*. If local law does not permit the operation of such services on the *Dealership Premises*, **Dealer** agrees to enter into a contract for the services of an independent company in order to provide complete warranty service for *MMNA Vehicles*. The company selected by Dealer for paint and body services must be approved in writing by **MMNA**.

3.    Workshop

In the installation and operation of **Dealer's** workshops and body and paint shops, if any, **Dealer** will comply with such standards and requirements as **MMNA** may prescribe from time to time, particularly with respect to:

a.    Procurement and maintenance of general tools and equipment, including hydraulic hoists and lubricating equipment;

b.    Procurement and maintenance of special tools from time to time designated by **MMNA** as necessary to properly provide warranty and repair services to **MMNA** customers;

18



c.     Use of workshop forms which may be prescribed by **MMNA** and use of **MMNA** customer service promotional material, as well as procurement and maintenance of at least one complete set of **MMNA** service literature; and

d.     Proper execution of all service and repair work with respect to *MMNA Products.*

Failure by **Dealer** to procure and maintain necessary special tools, general tools and equipment shall constitute grounds for termination of *this Agreement* under Section X.B.2.(k) hereof.

4.     Handling of Service Complaints

**Dealer** will receive, investigate and handle all complaints received from **MMNA** customers with a view to securing and maintaining the goodwill of the public toward **Dealer**, **MMNA** and *MMNA Products*. All complaints received by **Dealer** which cannot be readily remedied shall be promptly reported in detail to **MMNA**. **Dealer** recognizes that the repeated failure to properly resolve customer complaints shall constitute grounds for termination of *this Agreement* under Section X.B.2.(l) thereof.

5.     Stock of Parts

**Dealer** agrees to carry in stock at all times during the term of *this Agreement* an inventory of *MMNA Parts and Accessories* and **MMNA** approved parts and accessories adequate at any given time to enable **Dealer** to fulfill customer demands, warranty repairs and its other service obligations under *this Agreement.* For this purpose, **Dealer** agrees to purchase each year an initial supply of parts for the new models of *MMNA Vehicles.* **MMNA** shall at least fifteen (15) days prior to the introduction of new models provide a list of the parts which should be purchased by **Dealer**. **MMNA** shall have the right to audit **Dealer's** inventory from time to time and may require changes in the volume and contents thereof. In addition, **Dealer** agrees to provide adequate equipment for an effective parts supply operation. Failure to maintain an adequate stock of parts in accordance with standards and requirements established by **MMNA** shall constitute grounds for termination of *this Agreement* under Section X.B.2.(o) hereof.

6.     Parts Inventory Control

**MMNA** has elected to implement an electronic data processing parts inventory control system for the purpose of providing adequate records regarding the availability of parts. In recognition of the benefits of such a system, **Dealer** agrees to acquire and install, at its sole expense, on the *Dealership Premises* a computer terminal for the purpose of utilizing the parts inventory control system offered by **MMNA** in accordance with **MMNA's** instructions. Alternatively, at the **Dealer's** own discretion and to meet this requirement, **Dealer** may use at the *Dealership Premises* another inventory control system provided that (1) it is fully integrated with an automated accounting system; (2) the inventory control and



19

accounting system software are already operating and controlling the operation of two or more other dealerships which are owned by the **Dealer**, and (3) the inventory control and accounting software are operated on a single mainframe computer for all such dealerships.  This requirement shall not apply to **Dealer** if **Dealer** began doing business as an *Authorized MMNA Dealer* prior to November 1, 1985, provided however, **Dealer** has already installed on the *Dealership Premises* before said date a parts inventory control system approved by **MMNA**.

    7.    Service Rentals

In accordance with standards established by **MMNA**, **Dealer** shall maintain or have available for use by **Dealer's** service customers a fleet of rental vehicles adequate to serve the needs of customers who leave their *MMNA Vehicles* with **Dealer** for repair or servicing.

**C.    Assistance Provided by MMNA**

    1.    Service Training Assistance

**Dealer** and **MMNA** both recognize the importance of providing consistent, dependable service of the highest quality to **MMNA** customers.  Accordingly, **MMNA** agrees to provide service training assistance to **Dealer** designed to continually improve the level of service provided by **Dealer's** service and parts personnel.  Since **MMNA** and **Dealer** recognize that the maximum benefit from such training programs may only be derived if all service and parts employees attend the programs, **Dealer** agrees to require the attendance of all such personnel.  **MMNA** will endeavor to provide at least thirty (30) days' prior notice of all such mandatory programs to **Dealer**.  Repeated failure of **Dealer's** service and parts personnel, including, but not limited to, management, to attend such sessions shall constitute grounds for termination of *this Agreement* under Section X.B.2.(i) hereof.

    2.    Service Manuals and Materials

**MMNA** agrees to provide **Dealer** with one copy of each service manual or other publication **MMNA** deems necessary for the operation of **Dealer's** service organization.  Additional copies may be purchased by **Dealer** at its option.

    3.    Field Service Personnel Assistance

To assist **Dealer** in handling its service responsibilities under *this Agreement*, **MMNA** agrees to make available field service personnel who from time to time will advise and counsel **Dealer's** personnel on service-related subjects, including product quality, technical adjustment, repair and replacement of product components, owner complaints, warranty administration, service and parts merchandising, training and service management.

**IX.    DISPLAY OF TRADEMARKS, SERVICE MARKS AND TRADE NAMES**

**Dealer** acknowledges that **MMNA** is the exclusive owner of, or is authorized to use and to permit **Dealer** and others to use, the *MMNA Trademarks*.  During the term of *this Agreement*, **Dealer** is granted a nonexclusive privilege of displaying and otherwise using the *MMNA Trademarks* in connection with and for the purpose of identifying, advertising and selling *MMNA Products*;

20



provided, however, that **Dealer** shall promptly discontinue the display and use of any such *MMNA Trademarks*, and shall change the manner in which any such *MMNA Trademarks* are displayed and used, whenever requested to do so by **MMNA**. **Dealer** shall not use the *MMNA Trademarks* or the words "Mitsubishi" or "MMNA" or any other word confusingly similar to "Mitsubishi" in its corporate name if **Dealer** is a corporation, or in its partnership names if **Dealer** is a partnership, or in its proprietorship name if **Dealer** is a proprietorship; provided, however, that if **MMNA** gives its prior written consent, Dealer may use the words "Mitsubishi Motors" as part of the trade name under which it conducts its business. If **Dealer** uses the words "Mitsubishi Motors" as part of its trade name, upon the request of **MMNA** or upon the termination of *this Agreement* for any reason whatsoever, **Dealer** shall cease to use the words "Mitsubishi Motors" in its trade name and shall take or cause to be taken all steps to eliminate such words therefrom.

**Dealer** will do nothing to impair the value of, or contest the right of **MMNA** to the exclusive use of, any trademark, design mark, service mark, or trade name at any time acquired, claimed, used or adopted by **MMNA**.

## X.   TERMINATION OF AGREEMENT

### A.   Dealer May Terminate This Agreement Upon Thirty (30) Days Prior Written Notice To MMNA.

### B.   MMNA May Terminate This Agreement For Cause:

1.   Immediately--

    a.   Upon failure of **Dealer** to keep its **MMNA** dealership operations, or any part thereof, open for business for a period in excess of five (5) consecutive business days as required under Section IV.F. hereof, except in the event such closure or cessation of operation is caused by some physical event beyond the control of **Dealer**, such as civil war, riots, fires, floods, earthquakes, or other acts of God; or

    b.   Upon any change in location of the *Dealership Premises*, or upon any change in the amount or usage of the *Dealership Facilities*, or in the event **Dealer** directly or indirectly conducts any of its **MMNA** dealership operations at any other location or in any other facilities, without the prior written consent of **MMNA**; or

    c.   Upon the effective date of the expiration or earlier termination of **MMNA's** right to distribute *MMNA Products*.

2.   By Giving Thirty (30) Days Prior Written Notice Upon--

    a.   Failure of **Dealer** to obtain or maintain any license, or the suspension or revocation of any license, necessary for the conduct by **Dealer** of its business pursuant to *this Agreement*; or

    b.   Failure of **Dealer** to pay **MMNA** for any *MMNA Products* in accordance with the terms and conditions governing the purchase of such products; or



21

c. The death of any *Owner* or upon the death or incapacity of any *Executive Manager* (provided that the terms and conditions of Section X.D. hereof shall apply in any such case); or

d. Any sale, transfer, relinquishment or other change, voluntary or involuntary, by operation of law or otherwise, of any majority interest in the direct or indirect ownership or in the management of **Dealer** as set forth in Sections 3 and 4, respectively, of the *MMNA* Dealer Sales and Service Agreement, without the prior written consent of **MMNA**; or

e. The inability of **Dealer** to generally pay its debts as such debts become due, or the filing of any voluntary or involuntary petition under any bankruptcy law, or the execution by **Dealer** of an assignment for the benefit of creditors, or the appointment for **Dealer** of a receiver or trustee or other officer having similar powers for **Dealer** who is not removed within thirty (30) days from his appointment thereto, or any levy under attachment or execution or similar process which is not within ten (10) days vacated or removed by payment or bonding, or the conviction of **Dealer**, or any principal officer or manager of **Dealer**, of any crime tending to affect adversely the ownership, operation, management, business or interests of **Dealer** or **MMNA**; or

f. Failure of **Dealer** to establish or maintain the unrestricted availability of lines of credit in the amount set forth in the *Dealer Development Plan* and under terms approved by **MMNA** with financial institutions acceptable to **MMNA** for use in connection with **Dealer's** purchase and maintenance of its inventory of *MMNA Products* as required under the provisions of *this Agreement*, including, but not limited to, Sections III.C.2. and III.C.4. hereof; or

g. Impairment of the reputation or financial standing of **Dealer** or any of its management subsequent to the execution of *this Agreement*, or ascertainment by **MMNA** subsequent to the execution of *this Agreement* of any fact existing at or prior to the time of execution of *this Agreement* which tends to impair the reputation or financial standing of **Dealer** or any of its management and which would substantially impair the operation of the dealership; or

h. Any submission by **Dealer** to **MMNA** of a false or fraudulent dealership application report, statement or claim for reimbursement, refund, credit, or financial information, or submission to a customer of a false or fraudulent report or statement of any kind, including but not limited to statements concerning pre-delivery preparation, testing, servicing, repair or maintenance; or

i. Repeated failure of **Dealer's** sales, service and parts personnel, including but not limited to management, to fully participate in any training and/or mandatory promotional programs offered by **MMNA** to **Dealer** as required under Sections VII.E.1. and VIII.C.1. hereof; or

j. Failure of **Dealer** to properly obtain, erect, maintain, repair and illuminate signs and other displays in a manner approved by **MMNA** as required under the provisions of *this Agreement*, including, but not limited to,

22



Section IV.H. hereof; or

k.    Failure of **Dealer** to procure and maintain an adequate supply of general and special tools and equipment designated by **MMNA** as required under the provisions of *this Agreement*, including, but not limited to, Section VIII.B.3. hereof; or

l.    Failure of **Dealer** to maintain good relations with its customers, including, but not limited to, failure to notify **MMNA** of complaints by customers and repeated failure to properly resolve customer complaints as required under Section VIII.B.4. hereof; or

m.    Failure of **Dealer** to permit authorized **MMNA** representatives to examine, audit, reproduce and take for **MMNA's** use copies of **Dealer's** records, whether or not located on the *Dealership Premises*, as required under Section VI.D. hereof; or

n.    Failure of **Dealer** to maintain the minimum inventory of *MMNA Vehicles*, whether for showroom display, demonstration or immediate sale, as required under Section IV.G. hereof; or

o.    Failure of **Dealer** to maintain an adequate stock of parts as required under section VIII.B.5. hereof; or

p.    Failure of **Dealer** to accept an amended form of MMNA Dealer Sales and Service Agreement or renewal thereof within thirty (30) days after its presentation to **Dealer**, as required under Section 2 of the MMNA Dealer Sales and Service Agreement; or

q.    Failure of **Dealer** to promote effectively *MMNA Products* by using sales promotional literature offered by **MMNA**; or

r.    Failure of **Dealer** to use proper parts and accessories in the repair and servicing of *MMNA Vehicles* as required under Section VIII.A.4. hereof.

3.    By Giving Ninety (90) Days Prior Written Notice Upon--

a.    Failure of **Dealer** to reach and maintain its Minimum Sales Responsibility as defined in the *Dealer Development Plan*, or to correct deficiencies described in the *Dealer Development Plan*, as required under Section VII.B.1. hereof, or failure of **Dealer** to otherwise conduct its business in accordance with any of its obligations or requirements set forth herein to the satisfaction of **MMNA**; or

b.    Any material or continuing breach or violation by **Dealer** of any other term or provision of *this Agreement*; or

c.    Any dispute, disagreement or controversy between or among partners, managers, officers or stockholders of **Dealer** which in the good faith opinion of **MMNA** adversely affects the ownership, operation,



23

management, business or interests of **Dealer** or **MMNA**, or the presence in the management of **Dealer** of any person who in **MMNA's** good faith opinion no longer has the requisite qualifications to discharge his or her responsibilities.

**C.     Notice and Effect of Termination**

The date of any notice of termination shall be the date such notice is mailed.  Any notice of termination by **MMNA** shall inform **Dealer** of the grounds therefor, and any such notice may be withdrawn if during the applicable notice period **Dealer** cures to **MMNA's** satisfaction the condition or conditions upon which the notice is based.  If any period of advance notice of termination required hereunder is less than that required by applicable law, such period of advance notice shall be deemed to be the minimum period required by such laws.

**MMNA's** election to terminate *this Agreement* shall be without prejudice to any other right or remedy which may be available to **MMNA** hereunder or under applicable law.

**D.     Establishment of Successor  Dealer**

1.     Because of the Death of an *Owner*

In the event of termination of *this Agreement* by **MMNA** because of the death of an *Owner*, pursuant to Section X.B.2.(c) hereof, the following provisions shall apply:

a.     Subject to the other provisions of *this Agreement*, MMNA shall offer an MMNA Interim Sales and Service Agreement (a conditional and temporary sales and service agreement the term of which may not exceed one (1) year) in the form then used by MMNA to a successor dealer ("Successor  Dealer") comprised of the person nominated by such deceased *Owner* as his or her successor, together with the other *Owner(s),* provided that:

(i)     the nomination was submitted to **MMNA** in writing, was consented to by all remaining *Owners*, and was approved by **MMNA** prior to the death of such *Owner;*

(ii)     either (a) there has been no change in the Executive Managers of **Dealer** or (b) the provisions of Section X.D.2. below have been complied with; and

(iii)     the Successor Dealer has capital and facilities substantially in accordance with **MMNA's** established standards and requirements therefor at the time the MMNA Interim Sales and Service Agreement is offered.

b.     If the deceased *Owner* has not nominated a successor in accordance with this section, but all of the beneficial interest of the deceased *Owner* has passed by will or by the laws of intestate succession directly to the deceased *Owner's* spouse and/or children (the "Proposed New Owners"), subject to the other provisions of this section, **MMNA** shall offer an MMNA Interim Sales and Service Agreement in the form then used by

24



**MMNA** to a Successor Dealer comprised of the Proposed New Owners, together with the other *Owner(s),* provided that:

(i)     Either (a) there has been no change in the *Executive Managers* of **Dealer** or (b) the provisions of Section X.D.2. below have been complied with; and

(ii)    The Successor Dealer has capital and facilities substantially in accordance with **MMNA's** established standards and requirements therefor at the time the MMNA Interim Sales and Service Agreement is offered.

2.     Because of Death or Incapacity of *Executive Manager*

In the event of the termination of *this Agreement* by **MMNA** because of the death, physical or mental incapacity of an *Executive Manager,* subject to the other provisions of this section of *this Agreement,* **MMNA** shall offer an MMNA Interim Sales and Service Agreement to a Successor Dealer comprised of the *Owners,* provided that:

a.     Either (i) the *Owners* have nominated in writing a person to succeed the deceased or disabled *Executive Manager* which nomination was approved by **MMNA** prior to the event causing the death, disability or incapacity of such *Executive Manager,* or (ii) not later than one (1) month after the occurrence of such death or disabling event a new *Executive Manager* is proposed to MMNA by all of the *Owners* and such person is approved by MMNA; and

b.     The Successor Dealer has capital and facilities substantially in accordance with **MMNA's** established standards and requirements therefor at the time the MMNA Interim Sales and Service Agreement is offered.

3.     Evaluation of Successor Dealer

During the term of any MMNA Interim Sales and Service Agreement offered pursuant to Sections X.D.1. or X.D.2. hereof, **MMNA** will periodically review the performance of the Successor Dealer using the standards set forth in the Successor Dealer's *Dealer Development Plan.* If such Successor Dealer is able to satisfactorily meet such standards and desires to continue the dealership operation, the Successor Dealer will be given an opportunity to enter into an MMNA Dealer Sales and Service Agreement and such Successor Dealer shall be thereafter treated in the same manner as any *Authorized MMNA Dealer.*

4.     Termination of Market Representation

Notwithstanding anything stated or implied to the contrary in *this Agreement,* **MMNA** shall not be obligated to offer a dealership agreement to any Successor Dealer if **MMNA** notifies **Dealer** in writing prior to the event causing the termination of *this Agreement* that **MMNA's** market representation plans do not provide for continuation of that dealership operation in the *Sales Locality.*



25

5. Termination of Offer

Any offer of an MMNA Interim Sales and Service Agreement to a proposed Successor Dealer made under this section shall automatically expire if not accepted within thirty (30) days after presentation by **MMNA**.

E. **Continuance of Business Relations**

If, after the effective date of termination or expiration, **MMNA** chooses to accept orders from **Dealer** to fill customers' orders received prior to such date by **Dealer**, or if **MMNA** otherwise transacts business with **Dealer** relating to the sale of *MMNA Products*, all such transactions will be governed by the terms of *this Agreement*, so far as those terms are applicable. Nevertheless, no such acceptance of orders or other acts by **MMNA** shall waive termination or constitute a renewal of *this Agreement*.

F. **Discontinuance of Use of Marks**

Upon expiration or termination of *this Agreement*, **Dealer** agrees that it shall immediately:

1. Discontinue the use of the words "Mitsubishi," "**MMNA**" and all other *MMNA Trademarks*, or any semblance of any of the foregoing, including without limitation, the use of all stationery and other printed material referring in any way to Mitsubishi, **MMNA** or *MMC*, any other manufacturer of *MMNA Products*, or bearing any *MMNA Trademarks*; and

2. Discontinue any use of the words "Mitsubishi," "**MMNA**" or other *MMNA Trademarks*, or any semblance of any of the foregoing, as a part of its trade name, and file a change or discontinuance of such name with appropriate authorities; and

3. Remove all product signs bearing any *MMNA Trademarks* from all *Dealership Premises* at **Dealer's** sole cost and expense; and

4. Not represent itself as an *Authorized MMNA Dealer*; and

5. Refrain from any action including, without limitation, any advertising stating or implying that it is authorized to sell or distribute *MMNA Products*.

In the event **Dealer** fails to comply with the terms and conditions of this Section X.F., **MMNA** shall have the right to enter upon the *Dealership Premises* and remove all such signs bearing any *MMNA Trademarks* without liability to **Dealer**; and **Dealer** agrees that it shall reimburse **MMNA** for any costs and expenses incurred in connection therewith, including but not limited to reasonable attorneys' fees.

G. **Repurchase Provisions**

Upon the expiration or termination of *this Agreement*, **MMNA** may, at its option, purchase from **Dealer** all or any part of the following:

1. New, unused, undamaged current model year *MMNA Vehicles* then unsold in **Dealer's** inventory. The prices of such vehicles shall be the lower of (i) the price at which they were originally purchased by **Dealer** from **MMNA**, or (ii) the *Invoice Price* last established by **MMNA** for the sale of identical vehicles to *MMNA*

26



*Dealers* in the area in which **Dealer** is located, less in either case all prior refunds or allowances, if any, made by **MMNA** with respect thereto, and also less any costs and expenses required to place the repurchased vehicles in new car condition.

2.  New, unused and undamaged *MMNA Parts and Accessories* then unsold in **Dealer's** inventory which are in good and saleable condition, provided that they are listed in the then current *MMNA Master Parts Price List* and have not been superseded by another part or accessory. All such parts and accessories must be in the original container bearing a label with the appropriate part identification number. Should **MMNA** elect to purchase parts, the repurchase price shall be the price last established by **MMNA** for the sale of identical *MMNA Parts or Accessories* to *MMNA Dealers* in the area in which **Dealer** is located, less the maximum **Dealer's** discount available under the most favorable purchase terms available to **Dealer** and also less handling and packing charges then in effect as established by **MMNA**.

    If **Dealer** purchased *MMNA Parts and Accessories* from sources other than **MMNA**, **Dealer** must present to **MMNA** evidence of the price which it paid for such parts before **MMNA** will consider repurchasing such parts. In no event shall **MMNA** pay a price which exceeds the price for any part as calculated hereinabove.

3.  Tools and equipment especially designed for servicing *MMNA Vehicles*. The prices for such tools and equipment shall be as mutually agreed upon by **MMNA** and **Dealer**.

4.  Signs recommended by **MMNA** for identification of **Dealer**. The prices of such signs shall be as mutually agreed upon by **MMNA** and **Dealer**.

Within thirty (30) days after the date of expiration or termination of *this Agreement*, **Dealer** shall deliver or mail to **MMNA** a detailed inventory of all items referred to in subsections 1, 2, 3 and 4 above and **Dealer** shall certify the truth thereof. In the event **Dealer** fails to supply such a list to **MMNA** within said period, **MMNA** shall have the right to enter *Dealer Premises*, without liability to **Dealer**, for the purpose of compiling such an inventory list; and **Dealer** shall reimburse **MMNA** for any costs and expenses incurred in connection therewith. If, upon review of the inventory list, **MMNA** decides to purchase any of the items in subsections 1-4 hereinabove, **MMNA** will, within a reasonable period of time, provide **Dealer** with a written offer specifying the items **MMNA** wishes to purchase. **Dealer** shall act promptly in arranging for the sale and delivery of such items to **MMNA**. If **Dealer** fails to promptly cooperate in effectuating the sale, **MMNA** may, at its option, withdraw its offer to repurchase.

Any purchase made hereunder shall be deemed to be only with respect to those items which were purchased by **Dealer** from **MMNA**, unless **MMNA** by its notice of such purchase states otherwise. **Dealer** agrees that products to be purchased by **MMNA** from **Dealer** shall be delivered by **Dealer** to **MMNA's** place of business at **Dealer's** expense; or, if **Dealer** fails to do so, **MMNA** may transport such products and deduct the costs therefor from the repurchase price. **Dealer** agrees to execute and deliver to **MMNA** instruments satisfactory to **MMNA** conveying title to the aforesaid property to **MMNA**. If



such property is subject to any lien or charge of any kind, Dealer agrees to procure the discharge and satisfaction thereof prior to the repurchase of such property by **MMNA**.

## XI.    POLICY REVIEW BOARD

### A.    Establishment of Policy Review Board

In the interest of maintaining harmonious relations between **MMNA** and **Dealer** and to provide for the resolution of protests, controversies and claims related to the transactions contemplated under *this Agreement*, **MMNA** shall establish the Mitsubishi Motors North America, Inc. *Policy Review Board* (the "*Policy Review Board*") to be comprised of two corporate officers and one *MMNA Dealer* representative.  **Dealer** agrees to abide by the procedures of the *Policy Review Board*, as they may be revised from time to time by **MMNA**.

### B.    Appeal of Appointment to Policy Review Board

If, as a result of a market analysis undertaken by **MMNA**, **MMNA** proposes to appoint an additional *MMNA Dealer* in the *Sales Locality*, and if **Dealer** objects to such proposed addition, Dealer may file a written objection to such proposed addition with the *Policy Review Board* in accordance with the procedures established therefor within fifteen (15) days from the date of **Dealer's** receipt of notice of **MMNA's** intent to appoint such additional *MMNA Dealer*.  **MMNA** will not appoint such additional dealer until the *Policy Review Board* has rendered its decision on the matter and any decision of the *Policy Review Board* shall be binding on **MMNA** but not on **Dealer**.

### C.    Appeal of Termination to Policy Review Board

Any protests, controversies or claims by **Dealer** (whether for damages, stays of action or otherwise) with respect to any termination of *this Agreement* or the settlement of the accounts of **Dealer** with **MMNA** after termination of *this Agreement* has become effective shall be appealed by **Dealer** to the *Policy Review Board* within fifteen (15) days after **Dealer's** receipt of notice of termination or, as to settlement of accounts after termination, within six (6) months after the termination has become effective.  Appeal to the *Policy Review Board* shall be a condition precedent to **Dealer's** right to pursue any other remedy available under *this Agreement* or otherwise available under law.  **MMNA**, but not **Dealer**, shall be bound by the decision of the *Policy Review Board*.

### D.    Arbitration of Claims by  Dealer

If **Dealer** is dissatisfied with a decision of the *Policy Review Board* in a case arising under Section XI.C. hereof, **Dealer** may submit the matter to binding arbitration as hereinafter provided.

1.    Arbitration shall be initiated by **Dealer** by filing a written request therefor within fifteen (15) days after **Dealer's** receipt of notice of the decision of the *Policy Review Board* issued under Section XI.C. hereof.  **Dealer's** written request to arbitrate, together with the appropriate filing fee, shall be filed by **Dealer** with any office of the American Arbitration Association located nearest to the *Dealership Premises*, which shall then become the site of the arbitration proceedings, unless otherwise agreed to by the parties.  The arbitration request shall set forth a clear and complete statement of the nature of **Dealer's** claim and its basis, the amount involved, if any, and the remedy sought.

28



2. Arbitration shall be the sole and exclusive remedy of **Dealer** in such cases, and the decision and award of the arbitrator shall be final and binding on both parties.

3. The arbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association then in effect (hereinafter referred to as the "Commercial Rules") and in consonance with the United States Arbitration Act (9 U.S.C. Section 1, *et seq.*).

4. The arbitration shall be heard by a single, impartial arbitrator mutually agreeable to the parties, who shall be an attorney at law admitted to practice for at least five (5) years and selected from a panel of American Arbitration Association arbitrators. If the parties shall fail to reach such an agreement within fifteen (15) days of the **Dealer's** request to arbitrate, an arbitrator meeting such qualifications shall be named by the American Arbitration Association from such panel in accordance with the Commercial Rules.

5. If the arbitrator finds that termination of *this Agreement* by **MMNA** would be in accord with the provisions hereof, the standards set forth in the Automobile Dealer Suits Against Manufacturers Act, 15 U.S.C. Sections 1221-1225 (the "Dealer's Day in Court Act"), and any applicable state or local law, the arbitrator shall render an award in favor of **MMNA**, the termination shall become effective on the date of such award, and the termination shall be expressly recognized by **Dealer** as having been made by **MMNA** without breach by **MMNA** of *this Agreement*, the Dealer's Day in Court Act, or any applicable state or local law. If the arbitrator shall render an award in favor of **Dealer**, **MMNA's** notice of termination shall be void and shall not be deemed to constitute a breach of *this Agreement*. The decision and award of the arbitrator shall be conclusive as to all matters within the arbitrator's jurisdiction in all other proceedings between the parties, their successors or assigns, and judgment upon the award may be entered in any Court of competent jurisdiction.

6. To facilitate the selection of a competent and experienced arbitrator, the parties agree to make reasonable arrangements to compensate the arbitrator for the time spent in the performance of his or her duties. The compensation shall be commensurate with the professional standing of the arbitrator and shall be arranged in conformance with the Commercial Rules. The compensation of the arbitrator, the administrative fees and charges of the American Arbitration Association, and the other expenses of the arbitration shall be borne by the parties as provided in the Commercial Rules. The arbitrator shall, however, have discretion in the arbitrator's award to assess such compensation, administrative fees and charges and other expenses of the arbitration against either party in such proportions (or in their entirety) as the arbitrator may determine to be fair and equitable, provided that in all cases each party shall pay the fees and disbursements of its own legal counsel.

7. Unless **MMNA** and **Dealer** specifically agree to the contrary, and subject to the Commercial Rules and the procedures of the American Arbitration Association, the arbitration hearing shall be concluded not more than sixty (60) days after the date of **Dealer's** written request to arbitrate.



29

XII.   **GENERAL PROVISIONS**

    A.    **Indemnification**

        1.    **Dealer** shall defend and indemnify **MMNA** and any manufacturer of *MMNA Products* and hold each of them harmless from any and all liabilities that may be asserted or arise by reason or out of: (a) **Dealer's** failure or alleged failure to comply, in whole or in part, with any obligation assumed by **Dealer** pursuant to *this Agreement*; (b) **Dealer's** negligent or improper, or alleged negligent or improper, repairing or servicing of new or used *MMNA Vehicles* or equipment, or such other motor vehicles or equipment as may be sold or serviced by **Dealer**; (c) **Dealer's** breach, or alleged breach, of any contract between **Dealer** and **Dealer's** customer; or (d) **Dealer's** misleading statement or misrepresentation, or alleged misleading statement or misrepresentation, either direct or through advertisement, to any customer of **Dealer**. This indemnification shall include all attorneys' fees, court costs and expenses incurred by **MMNA** and/or any manufacturer of *MMNA Products* in defending any claim or suit asserted as a result of the foregoing.

            In the event that any legal action arising out of any of the foregoing causes or alleged causes is brought against **MMNA**, any manufacturer of *MMNA Products* and/or any of their shareholders, then **Dealer** shall undertake, at its sole expense, the defense of said action on their behalf. Should any tender of such defense be refused by **Dealer**, then **MMNA**, any manufacturer of *MMNA Products* and/or any of their shareholders shall conduct such defense; and **Dealer** shall be liable to **MMNA**, any manufacturer of *MMNA Products* and/or any of their shareholders for costs of such defense, including attorneys' fees, together with any judgment or settlement paid by **MMNA**, any manufacturer of *MMNA Products* and/or any of their shareholders.

            **Dealer** shall have no obligation to indemnify **MMNA** and/or any manufacturer of *MMNA Products* pursuant to this paragraph if the injury or damage as to which indemnification is demanded is alleged to have been caused or contributed to in any way by any act or omission by **MMNA** and/or any manufacturer of *MMNA Products*.

        2.    **MMNA** and/or any manufacturer of *MMNA Products* shall indemnify **Dealer** and hold them harmless from any and all claims for personal injury or property damage resulting from the alleged malfunctioning of an *MMNA Product* claimed to have been caused by a factory defect or deficiency in design of such product. This indemnification shall include all attorneys' fees, court costs and expenses incurred by **Dealer** in defending any claim or suit asserted as a result of the foregoing.

            In the event that any legal action arising out of any of the foregoing causes or alleged causes is brought against **Dealer** and/or any of its shareholders, then **MMNA** and/or any manufacturer of *MMNA Products* shall undertake, at its sole expense, the defense of said action on their behalf. Should any tender of such defense be refused by **MMNA** and/or any manufacturer of *MMNA Products*, the **Dealer**, and/or any of its shareholders, shall conduct such defense; and **MMNA** and/or any manufacturer of *MMNA Products* shall be liable to **Dealer**, and/or any of its shareholders for costs of such defense, including attorneys' fees, together with any judgment or settlement paid by **Dealer**, and/or any of their shareholders.

30



**MMNA** and/or any manufacturer of *MMNA Products* shall have no obligation to indemnify **Dealer** pursuant to this paragraph if the injury or damage as to which indemnification is demanded is alleged to have been caused or contributed to in any way by any act or omission by **Dealer**, including, but not limited to, improper or unsatisfactory service or repair, misrepresentation or any claim of **Dealer's** unfair or deceptive trade practice.

3.    Any party seeking indemnification shall promptly give written notice to the proposed indemnitor of any lawsuit and provide copies of any pleadings which have been served, together with all information then available regarding the circumstances giving rise to the suit. The proposed indemnitee shall at all times take all reasonable steps to insure that the defense of such lawsuit is not prejudiced by its action or inaction. The parties shall cooperate fully in the defense of such lawsuit in such manner and to such extent as the indemnitor may reasonably require.

**B.    No Implied Waivers**

Any failure of either party at any time to require performance by the other party of any provision hereof shall in no way affect the full right to require such performance at any time thereafter, nor shall any waiver by either party of a breach of any provision hereof constitute a waiver of any succeeding breach of the same or any other provision, nor constitute a waiver of the provision itself. The election by either party of a particular remedy on default (including but not limited to termination of *this Agreement*) will not be exclusive of any other remedy provided hereunder or by applicable law, and all rights and remedies of the parties hereto will be cumulative.

**C.    Waiver of Trial by Jury**

For all disputes, controversies or claims which may arise between **MMNA** and **Dealer** out of, or in connection with, *this Agreement*, its construction, interpretation, effect, performance or nonperformance, termination or the consequences thereof, or in connection with any transaction between them contemplated hereby, **MMNA** and **Dealer** hereby waive, to the extent permitted by law, the right to trial by jury.

**D.    Dealer Not Agent or Representative**

*This Agreement* does not make **Dealer** the agent or legal representative of **MMNA** or any other manufacturer of *MMNA Products* for any purpose whatsoever. **Dealer** is not granted any express or implied right or authority to assume or to create any obligation or responsibility on behalf of or in the name of **MMNA** or any other manufacturer of *MMNA Products* or to bind either in any manner whatsoever.

**E.    Assignment**

Neither party may assign *this Agreement* or any of its interest herein without the prior written consent of the other party, except that **MMNA** may assign *this Agreement* without



31

such consent to any person, firm or corporation succeeding to its business and to any subsidiary or affiliated company of **MMNA**.

**F.**   **Expenses**

Except as provided in *this Agreement*, **MMNA** shall not be under any liability whatsoever for any expenditure made or incurred by **Dealer** in connection with **Dealer's** performance of its obligations pursuant to *this Agreement*.

**G.**   **Taxes**

**Dealer** agrees that it shall be responsible for and shall duly pay any and all sales taxes, use taxes, excise taxes, and other governmental or municipal charges, whenever imposed, levied or based upon the sale of *MMNA Products* by **MMNA** to **Dealer** and shall maintain accurate records of same for reporting purposes.  **Dealer** agrees to pay and to hold **MMNA** harmless from any sales tax, use tax or similar tax, and any claims or demands (whether or not lawful) made by tax authorities with respect to such taxes, applicable with respect to the sale of *MMNA Products* from **MMNA** to **Dealer** and from **Dealer** to its customers.

32

