UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANTHONY NELSON,**<br><br>Plaintiff,<br><br>-against-<br><br>**DIANE ARGYROPOULOUS, PHILIP ARGYROPOULOUS, CHRIS ORSARIS, ALEX LETTAS, VICTORY AUTO GROUP LLC, SPARTAN AUTO GROUP LLC, VICTORY MITSUBISHI, MITSUBISHI NORTH AMERICA**<br><br>Defendant. | INDEX NO. 18-cv-11413 (AT) (SDA)<br><br>**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pursuant to this Court's Local Civil Rule 56.1 and in support of its motion for summary judgment under Fed. R. Civ. P. 56 dismissing the complaint herein, Defendants, Diane Argyropoulos, Philip Argyropoulos, Chris Orsaris, Alex Lettas, Victory Auto Group LLC, Spartan Auto Group LLC, Victory Mitsubishi submits the following statement of material facts as to which there is no genuine issue to be tried in support of its motion for summary judgment against plaintiff, Anthony Nelson ("Plaintiff"), with record support as required by Local Civil Rule 56.1(d).

## Background

1. Defendant Victory Auto Group LLC, Spartan Auto Group, LLC, Victory Mitsubishi collectively operate a new car dealership at the address, 4070 Boston Road, Bronx, NY, which the Plaintiff admits to in his EEOC charge. (Exhibit 1, Annexed to Hans Declaration)

2.  The Defendants, Diane Argyropoulos, Philip Argyropoulos, Chris Orsaris, Alex Lettas, are all individuals who either own and/or work with the corporate Defendants and have all appeared in this lawsuit. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 64-65,52,143)

3.  The Plaintiff, Anthony Nelson was a car salesman who began his employment with the Defendant corporations in November 2015 as a Product Specialist, a/k/a, Car Salesman (Exhibit 1, Annexed to Hans Declaration)

4.  On August 28, 2019, the Plaintiff voluntarily ceased his employment and left his job by his own decision. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 277)

## Facts

5.  On September 21, 2017, the Plaintiff initially filed an Intake Questionnaire claiming discrimination but never filed a Charge or Complaint. (Exhibit 1, Annexed to Hans Declaration)

6.  On June 29, 2018, the Plaintiff filed a Charge of Discrimination alleging race, and age discrimination.  That Charge never alleged any retaliation. (Exhibit 3, Annexed to Hans Declaration)

7.  On September 19, 2018, the Plaintiff filed a pro se Complaint alleging racial and age discrimination.  Additionally, the Complaint alleged retaliation for the first time as well as *"hostile work environment"* and *"wire fraud, internet-based manipulation, and identity theft."* (Exhibit 4, Annexed to Hans Declaration)

8. The Plaintiff claimed he was the subject of racial remarks, wire fraud and identify theft. However, there were no facts set forth regarding identity theft, wire fraud, age discrimination or retaliation. (Exhibit 4, Hans Declaration)

9. In the Complaint, the Adverse Employment Action section, the Plaintiff checked off that his employment was terminated and that he was not provided with terms and conditions of employment of similar employees, and subject to retaliation, hostile working environment, wire fraud, internet based manipulation and identity theft. No facts or specifics of any of the foregoing was set forth in the Complaint, (Exhibit 4, Annexed to Hans Declaration).

10. The Plaintiff never modified or made changes to the Complaint until July 2020. He testified that the facts in that Complaint are true today as they were set forth in 2018. (Exhibit 2, Hans Declaration, Nelson Deposition p. 32-33). The Amended Complaint was filed in August 2020. (Exhibit 5, Annexed to Hans Declaration) and fundamentally never changed the initial Complaint.

## **Race and Age Claims**

11. With regard to the Plaintiff's age discrimination claim, the Plaintiff believes he was called *"Bill Cosby"* and *"Uncle Ben"* on occasion and the mere references of those individuals not only support a race claim but also an age discrimination claim because the two individuals *"Bill Cosby"* and *"Uncle Ben"* are two *"old people"*(Exhibit 2, Hans Declaration, Nelson Deposition, p. 35-36). The only comment of race discrimination was the reference to *Bill Cosby or Uncle Ben* and there were no others in any document submitted by the Plaintiff in this action. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 61-62)

3

12. The Plaintiff was very clear that the usage of the words *"Bill Cosby or Uncle Ben"* were uttered only by Chris Orsaris and he never used the word *"nigger."* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 177). There was one incident where another employee used those words and he apologized to the Plaintiff. (Exhibit 2, Hans Declaration, p.163). On the other hand, Mr. Orsaris lent him money and bought him lunch on occasion. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 169, 178)

13. The Plaintiff testified that the Defendant corporation is composed of 78% African American employees. The Plaintiff testified that he was the only person that the Bill Cosby/Uncle Ben comment was directed toward. When questioned why these comments were directed just to him, he testified it was just to *"annoy me."* He does not have any knowledge of other black employees being treated differently. (Exhibit 2, Hans Declaration, Nelson Deposition, p 169-171)

14. Interestingly, with regards to the racial comment of *Bill Cosby or Uncle Ben*, the Plaintiff thought the Defendants were making fun of him because Mr. Cosby is blind, a rapist and not the TV character he played. He did not see it as a race comment because he does not look like Mr. Cosby and thus, he found the comment *"disrespectful."* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 162, 57-58)

15. The Plaintiff testified to certain words he believes support his claims such as *"certain looking customers in the niggerative"* which he testified were *my words* and not the Defendants and yet it forms one of the more significant allegations in the Complaint. The Plaintiff's determination that he was the victim of age discrimination was based on the fact that clearly Bill Cosby and Uncle Ben *"are old people"* who happen to be multi-millionaires (Exhibit 2, Hans Declaration, Nelson Deposition, pg. 172)

4

16. The only other alleged fact of age discrimination was that his recollection of *"a washed-up stripper comes in our store. We sell cars to strippers; we sell cars to anybody. There was this woman come to our store and he made the remark to me would an old guy like you do her without a raincoat on"* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 36)

17. Essentially the only racial and/or age discrimination statement by any Defendant was the Bill Cosby/Uncle Ben comment. The Plaintiff could not remember if any other comment or racial statements were made. He could not identify or testify to any other racial comments. While he stated there were, he could not testify to any when asked. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 37-40)

18. The Plaintiff stated there were numerous comments, but nothing was memorable except the Bill Cosby/Uncle Ben comment. (Exhibit 2, Declaration, Nelson Deposition, p. 38)

19. The Plaintiff's only other proof of age discrimination concerned an unidentified comment about age by an employee back in 2017. He testified that he did not know any specifics about that comment nor who made it (Exhibit 2, Hans Declaration, Nelson Deposition, p. 40-41; 43)

20. The Plaintiff did not report any statements or jokes that had a racial tone to anyone at the Company from November 2015 to November 2016. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 55-56)

21. During the Plaintiff's employment, the only two individuals who allegedly uttered any racial or age remarks were, Mr. Lettas and Mr. Orsaris. However, when he heard those comments and he simply thought they were *disrespectful.* (Exhibit 2, Declaration, Nelson Deposition, pg. 55-58)

22. When specifically asked whether there are any other comments other than the Bill Cosby or Uncle Benn remarks that Mr. Orsaris or Mr. Lettas the Plaintiff testified:

5

Q: If there are others, tell me who they were.

If there's not, it limited to that, tell me that.

It doesn't matter. I just want to know what

you are saying"

A: Other than that no.

A: No, just those right there.

(Exhibit 2, Hans Declaration, Nelson Deposition, p. 61-62)

23. As far as his recollection of racism, the Plaintiff stated in his Interrogatory Response that an,
employee, Alex Lettas, , talked about Dominicans and chicken wings but those statements were
not included in any EEOC filing,  nor his Complaint in this action.  He explained the absence
of this fact was due to the failure of the EEOC to understand him in that he was talking and
made "broader statement" (Exhibit 2, Hans Declaration, Nelson Deposition, p. 272-273).

24. While he agreed Mr. Lettas's words were "*horrible*" and "*racial insults*" he did not think it
was necessary to include it in his Complaint. (Exhibit 2, Hans Declaration, Nelson Deposition,
p. 273)

25. While the Plaintiff has some compensation issues with the Defendant, those issues of money
were not as a result of the problems relating to age or race claims (Exhibit 2, Hans Declaration,
Nelson Deposition, p. 46)

## Retaliation

26. The Defendants corporations were owned by Defendants Diane Argyropoulos and Philip
Argyropoulos.  The Plaintiff never spoke to Philip Argyropoulos because he was never around,
and he never spoke to Diane Argyropoulos. Specifically, the Plaintiff asked:

6

Q: Did you go to Diane at any time you heard

any racial or age-related comment? Did you get

to her and say this was just said and I want you

to know?

A: No

(Exhibit 2, Declaration, Nelson Deposition, p. 64-66)

27. The Plaintiff was asked if he informed anyone of his complaints of discrimination, either at the job or to a third party. He did not because *"I did not have anything in place or lined up..."* (Exhibit 2, Hans Declaration, Nelson Deposition, p 152-153). He never informed anyone of the word *"niggerative"* which is referred to in the Complaint. (Exhibit 2, Hans Declaration, Nelson Deposition, p.182)

28. The Plaintiff was again questioned as to what evidence he had, if any, that he could not go to his superiors and complain if he had an issue. His only response was the *"possibility that he would lose his job."* When questioned what evidence he had he testified, *"I don't know I am not a mind reader."* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 157)

29. Additionally, he was asked why he did not go to the owner, government agency, or a lawyer and disclose facts that he was discriminated against. He was asked why he did not inform anyone of his complaints. His response was *"Good I don't know..."* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 159). Essentially, he never reported any racial statements or jokes. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 56)

30. The Plaintiff was questioned as to exactly what he meant by his claim that he suffered retaliation and he stated he was *"retaliated against in a public setting with people around."*

7

The remainder of his retaliation was harassment and insulting him in front of customers. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 251-252

31. Finally, the Plaintiff was asked whether he had any evidence that something bad would have happened if he brought information of discrimination to anyone's attention including being fired? He responded, *"I can't answer that question"* because *"How would I know?"* When pressed further if he has any evidence that something bad would have happened, he responded *"No."* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 159-160)

32. The Plaintiff sustained no adverse employment action nor did the Plaintiff claim he engaged in any protected activity as he claimed his performance was always great and exceptional. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 69, 131).  He voluntarily quit the job because he was *fed up* and never testified to any retaliation. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 265).

33. The Plaintiff further testified his performance was excellent (Exhibit 2, Hans Declaration, Nelson Deposition, p. 69, 131) and he was making money. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 247-248).  There was never any retaliation toward the Plaintiff with respect to his compensation.

34. The Plaintiff claimed he was treated differently than other workers.  He claimed that there was a scheme that resulted in him owing money to the employer.  However, the Plaintiff testified that any alleged scheme to defraud him was applied to all the salespeople and not just him. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 246-248)

## Alleged Termination Facts and Voluntary Abandonment

35. The retaliation that the Plaintiff was able to identify was *in public setting* with people around. While he never testified to any specifics, it seems the occurrence he was referring to was at the Sunoco gas station.  He was asked whether that is the extent of the retaliation and he testified it included insulting him in front of customers.  He said he was taken off the floor but his compensation was unaffected alleged by race or age. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 46).  He thinks they went after him, but he could not identify no adverse action exhibited by the Defendants (Exhibit 2, Hans Declaration, Nelson Deposition, p. 251-253).

36. There was an alleged assault on the Defendants premises involving the Plaintiff in September 2017 with a co-worker named Manny. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 190-192)

37. Following the altercation with Manny, the Plaintiff left the premises and walked across the street to the Sunoco station to catch a bus. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 208-209)

38. The Plaintiff alleges that Chris Orsaris pulled up in his car and told the Plaintiff to *"go home and get your gun-you're fired."*  The Plaintiff believed he was fired at that time. The Plaintiff never produced any witness statements or testimony to support such an occurrence. (Exhibit 2, Hans Declaration, Nelson Deposition, p 210).  As a result of this incident the Plaintiff unilaterally decided not to go to work for approximately a month. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 210-211)

39. The Plaintiff returned to work one month later because the Defendant, Chris Orsaris called him and asked him to come back which he voluntarily agreed and came back to work. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 212;264)

40. Essentially, the Plaintiff testified he was fired over an argument with Chris Orsaris and then re-hired and returned to work because he was asked to by Mr. Orsaris. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 212-214)

41. Despite an alleged altercation with Chris Orsaris at the Sunoco Station where the Defendant allegedly told the Plaintiff to get his gun, the Plaintiff believed it was not a fearful incident nor was he afraid ( Exhibit 2, Hans Declaration, Nelson Deposition, p. 216)

42. The Plaintiff testified he went back to work because be needed to get recertified and he believed everyone would *"cool down"* and everyone would *"realize they are acting stupid and start acting like grownups."* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 216-218)

43. When asked why he went back again, he stated *"I needed the job."* Additionally, he did not want to *"stir the pot"* and it was not a serious issue because he needed the money. (Exhibit 2, Hans Declaration, Nelson deposition, p. 218)

44. The Plaintiff testified when he decided to return to work, he was happy to be making money and able to pay his bills (Exhibit 2, Hans Declaration, Nelson Deposition, p. 219)

45. The Plaintiff believed that his departure from the Defendant employer was a constructive discharge and that he was simply *"fed up"*. No other reason was given, and the employer subsequently texted him to inquire where he was after he left the Defendants premises. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 277).   He called it *"constructive discharge"*. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 277).

46. The Plaintiff seemed confused as to whether he was terminated since he went back to work. He stated he was terminated but went back to work because he was asked to come back weeks later. When asked that it was true that he was not terminated, astonishingly he answered he was terminated even though he was asked to come back to work. He came back to work and work for a month. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 263-264)

47. When asked if his employment ended, it was because of a decision he made and not by the Defendants. He decided that the alleged "racial or age remarks were starting up again, so he unilaterally quit his employment and never communicated with any of his superiors of that decision. (Exhibit 2, Hans Declaration, Nelson Deposition, p.265)

48. Interestingly, at the time of his departure the Defendants was made aware of a garnishment notice concerning the Plaintiff that was about to be effective at the time of his abandonment of the job. The Plaintiff knew about it and it arrived at the Defendant the same time he abandoned the job. (Exhibit 2, Hans Declaration, Nelson Deposition, p. 278-279)

## Hostile Work Environment

49. The Plaintiff testified that the hostile work environment amounted to nothing more than rudeness and it was nothing more than pure insults (Exhibit 2, Hans Declaration, Nelson Deposition, p.79).

50. Further, testimony on hostile work environment revealed that the Plaintiff based a claim of hostile work environment on the fact that allegedly Chris Orsaris said, *"go home and get your gun"* (Exhibit 2, Hans Declaration, Nelson Deposition, p. 82). He testified that they made jokes about him when he was introduced to customers and he would talk them to death

11

(Exhibit 2, Hans Declaration, Nelson Deposition, p. 83). Finally, there was usage of
profanity in the workplace (Exhibit 2, Hans Declaration, Nelson Deposition, p. 83). He
believes the hostile work claim is based on the fact that he was screamed at for his
performance or accusing him of bad language. (Exhibit 2, Hans Declaration, Nelson
Deposition, p. 77). All of the foregoing is the full extent of the Plaintiff's claim of hostile
work environment and not based upon any protected right. There is no further act of a hostile
work environment testified to by the Plaintiff in the deposition.

## Amended Complaint

51. The Plaintiff testified on September 18, 2020 regarding his Amended Complaint. He
testified that he has no evidence of any discrimination before his employment began (Exhibit
6, Hans Declaration, Nelson Deposition p.8). He contradicted his original deposition
regarding the testimony that Mr. Orsaris targeted him on a daily basis (Exhibit 6, Hans
Declaration, Nelson Deposition, p. 12).

52. When testifying about witnesses, the Plaintiff agreed to supply Defendants with the names of
witnesses to the discrimination he endured while employed at Defendants. (Exhibit 6, Hans
Declaration, Nelson Deposition p. 18, 19, 24, 25). The Plaintiff did supply said list after the
deposition. Of particular note, this was the first time the Defendant were made aware of
many of the individuals on that list.

53. The Plaintiff testified on September 20th, that when Mr. Orsaris jumped out of his car and
screamed at him, he never used any discriminatory words despite harsh and threatening

words such as *gun* which Mr. Orsaris allegedly sated at that time, (Exhibit 6, Hans

Declaration, Nelson Deposition, p. 33,34,38)

54. He admits that the allegations contained in the Amended Complaint are repetitive of his

original Complaint filed in this action.(Exhibit 6,Hans Declaration, Nelson Deposition p. 40,

42) and this pleading was nothing more than a clarification of the original Complaint and

there are no new facts alleged in this new pleading, (Exhibit 6, Hans Declaration, Nelson

Deposition p. 41, 44, 45)

Dated: November 11, 2020                    Respectfully submitted,
                                            STEPHEN D. HANS ASSOCIATES, P.C.

                                            By:___ /s Stephen D. Hans
                                            Stephen D. Hans (SDH-0798)
                                            30-30 Northern Boulevard
                                            Long Island City, NY 11101
                                            (718) 275-6700

13