USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/11/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Anthony B. Nelson,

                            Plaintiff,

-against-

Diane Argyropoulous et al.,

                            Defendants.

1:18-cv-11413 (AT) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE:**

## INTRODUCTION

*Pro se* Plaintiff Anthony Nelson ("Plaintiff" or "Nelson") brings this action against Defendants Diane Argyropoulous, Philip Argyropoulous, Chris Orsaris, Alex Lettas, Victory Auto Group LLC, Spartan Auto Group LLC, Victory Mitsubishi and Mitsubishi Motors North America, Inc. (Compl., ECF No. 2; Am. Compl., ECF No. 101.) Plaintiff asserts claims for race and/or age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-97; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101–8-131. (*See* Compl.)

Currently before the Court is a motion by all Defendants except for MMNA (referred to herein as the "Victory Defendants") for summary judgment.[1] (Mot. Summ. J., ECF No. 126.) For the reasons set forth below, I respectfully recommend that the motion be GRANTED IN PART and DENIED IN PART.

## RELEVANT FACTS[2]

In November 2015, Nelson, a black man over the age of 40, began working as a certified product specialist, or car salesman, at Victory Mitsubishi ("Victory"), a car dealership in the Bronx. (EEOC Charge, ECF No.126-8; Defs.' 56.1 ¶¶ 1, 3; Pl.'s Resp. to Defs.' 56.1 ¶ 3.) In or around February 2016, Chris Orsaris started working at Victory, along with his cousin, Alex Lettas, and his two sons. (EEOC Charge; Am. Compl. ECF No.101-1 ¶ 3; *see also* Pl.'s Decl. at 10.) Nelson alleges that, over an approximately two-year period, Chris Orsaris regularly used racial and age-based epithets, including referring to Nelson as "Uncle Ben" and "Bill Cosby." (Compl. at 5; Am. Compl. ¶ 3; Nelson 9/13/2019 Tr., ECF No. 126-5 to No. 126-7, at 52-62, 162; Nelson 9/18/2020

---

[1] MMNA filed a separate motion to dismiss on October 14, 2020, which is pending before the Court. (Second Mot. to Dismiss, ECF No. 122.)

[2] As Defendants' 56.1 Statement reflects, most of the relevant facts are in dispute. (*See generally* Defs.' 56.1, ECF No.126-2; *see also* Defs.' Mem., ECF No. 126-3, at 9 (stating that Defendants are relying on the pleadings as well as Plaintiff's deposition)). The Court has considered the entire record, construed in the light most favorable to Plaintiff, in making a recommendation on Defendant's motion. *See Purisima v. Tiffany Ent.*, No. 09-CV-03502 (NGG) (LB), 2014 WL 3828291, at *1 (E.D.N.Y. June 20, 2014), *report and recommendation adopted*, 2014 WL 3828376 (E.D.N.Y. Aug. 4, 2014) (conducting "an assiduous review of the record" to determine whether there existed genuine issues of material fact) (citing, *inter alia*, *Sawyer v. Wight*, 196 F.Supp.2d 220, 225 (E.D.N.Y. 2002) (noting that courts "may discretionarily choose to search the record of their own accord" to "develop a factual record on which to decide [summary judgment] motions")). The Court does not consider the many legal arguments set forth in Defendants' 56.1 Statement, as such arguments are improper. *See JD2 Env't, Inc. v. Endurance Am. Ins. Co.*, No. 14-CV-08888 (JPO), 2017 WL 751157, at *1 n.1 (S.D.N.Y. Feb. 27, 2017); *see also LG Cap. Funding, LLC v. PositiveID Corp.*, No. 17-CV-01297 (NGG) (SJB), 2019 WL 3437973, at *2 (E.D.N.Y. July 29, 2019), *report and recommendation adopted*, 2019 WL 4564882 (E.D.N.Y. Sept. 20, 2019) ("Legal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded.").

Tr., ECF No. 126-11, at 12-13.) In addition, Nelson alleges that Lettas made discriminatory comments about minority customers, including referring to black customers as "in the niggerative" and using other racial slurs. (Compl. at 5; Am. Compl. ¶¶ 3-4, Nelson 9/13/2019 Tr. at 176-78.) According to Nelson, Lettas also frequently shared racial jokes and videos. (Am. Compl. ¶ 5; Nelson 9/13/2019 Tr. at 105-06, 109-10, 112-14.)

On September 18, 2017, an employee at Victory named Manny physically struck Nelson. (Compl. at 5; Am. Compl. ¶ 8; Nelson 9/13/2019 Tr. at 184-92, 207-08.) Following this incident, Stavros Orsaris told Nelson to go home. (Compl. at 5; Am. Compl. ¶ 8; Nelson 9/13/2019 Tr. at 207.) Nelson walked across the street to the Sunoco gas station to wait for the bus and, while he was waiting, Chris Orsaris drove by, got out of his car, and shouted at Nelson, "Go home and get your gun. You're fired!" (Compl. at 5; Am. Compl. ¶ 9; Nelson 9/13/2019 Tr. at 208-10.) Approximately one month later, someone from Victory called Nelson and asked him to return to work, which Nelson did.[3] (Defs.' 56.1 ¶ 39; Pl.'s Resp. to Defs.' 56.1 ¶ 39.) On August 28, 2019, Nelson stopped working at Victory. (Defs.' 56.1 ¶ 4; Pl.'s Resp. to Defs.' 56.1 ¶ 4.)

## PROCEDURAL HISTORY

On September 21, 2017, Nelson filed an intake questionnaire with the Equal Employment Opportunities Commission ("EEOC"). (Intake Questionnaire, Hans Decl. Ex. 1, ECF No. 126-4.) In completing the questionnaire, Nelson checked the box indicating that he wanted to talk with an EEOC employee before deciding whether to file a charge. (*Id*. at 4.) On June 29, 2018, Nelson filed a charge of discrimination with the EEOC and the New York State Division of Human Rights. (EEOC

---

[3] The Victory Defendants assert that Chris Orsaris called Nelson, while Nelson contends that it was Lettas. (Defs.' 56.1 ¶ 39; Pl.'s Resp. to Defs.' 56.1 ¶ 39.)

Charge, Hans Decl. Ex. 3, ECF No. 126-8.) Nelson received a Right to Sue Letter on September 19, 2018, and filed the original Complaint in this action on December 4, 2018. (Compl. at 8.) Nelson filed an Amended Complaint on July 9, 2020. (Am. Compl., ECF No. 101.) Following discovery, the Victory Defendants filed the motion for summary judgment that is now before the Court.

## LEGAL STANDARDS

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23, (1986). If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of material fact. *Id*. at 322. "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (quoting *Anderson*, 477 U.S. at 248).

The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson,* 477 U.S. at 255. Moreover, "[w]here, as here, the party opposing summary judgment is proceeding *pro se*, the court should read his papers 'liberally,' and 'interpret them to raise the strongest arguments that they suggest.'" *Leckie v. Robinson*, No. 17-CV-08727 (PGG) (BCM), 2020 WL 5238602, at *7 (S.D.N.Y. Feb. 6, 2020) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), *report and recommendation adopted*, 2020 WL 2114846 (S.D.N.Y. May 4, 2020); *see also Lerer v.*

4

*Spring Valley Fire Dep't, Inc.*, No. 19-CV-10714 (CS), 2021 WL 1425238, at *3 (S.D.N.Y. Apr. 14, 2021) ("*Pro se* litigants must be afforded "special solicitude," "particularly where motions for summary judgment are concerned") (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014)).

## DISCUSSION

I. **Plaintiff's Title VII, ADEA, Section 1981 And NYSHRL Claims**

The Victory Defendants move for summary judgment on Plaintiff's claims of race and age discrimination based on adverse employment action (wrongful termination),[4] hostile work environment and retaliation. The Court considers each of these claims in turn.

A. **Discrimination Claims Based On Adverse Employment Action**

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Similarly, Section 1981 provides that all "persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," where that individual is "at least 40 years of age." 29 U.S.C. §§ 623(a)(1), 631(a). The NYSHRL prohibits employers from "discriminat[ing] against [an] individual in compensation

---

[4] Plaintiff also alleges that he was subject to different terms and conditions of employment and was excluded from an employment agreement with Spartan Auto Group. (*See* EEOC Charge; Am. Compl. ¶ 7; Nelson 9/18/2020 Tr. at 30.) The Victory Defendants' motion does not address this claim and, thus, the Court does not consider it.

5

or in terms, conditions or privileges of employment" because of, inter alia, an indivdual's age or race. N.Y. Exec. Law § 296(1)(a).

On a motion for summary judgment, discrimination claims under Title VII, the ADEA, Section 1981 and the NYSHRL are analyzed using the three-step burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 441 U.S. 792 (1973).[5] *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (Title VII, Section 1981 & NYSHRL); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (ADEA). To establish a *prima facie* case of discrimination based on an adverse employment action, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010); *see also Gorzynski*, 596 F.3d at 107.

The Victory Defendants' primary argument is that Plaintiff has failed to show that he suffered an adverse employment action and, thus, has not met his burden to establish a *prima facie* case of discrimination. (*See* Defs.' Mem. at 13-14, 19.) The Court finds that the Victory Defendants have not demonstrated the absence of a disputed fact on this issue. The Victory Defendants cite to Nelson's deposition testimony stating that he left his employment in August

---

[5] In the first step of this framework, the employee bears the burden of setting forth evidence sufficient to support a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If the plaintiff is able to establish a prima facie case, the burden then "shifts to the defendant to persuade the court by a preponderance of the evidence that legitimate, nondiscriminatory reasons for the challenged employment action existed." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 250 (1981). Finally, if the defendant proffers such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine*, 450 U.S. at 253).

2018 because he was "fed up." (*Id*. (citing Defs.' 56.1 ¶ 45 (citing, in turn, Nelson 9/13/2019 Tr. at 277)).) However, Nelson's termination-based claims do not stem from his departure from Victory in 2018 (which is not mentioned in the Complaint or Amended Complaint), but stem from his alleged termination in September 2017.[6] (*See* Compl. at 5; Am. Compl. ¶ 9; *see also* EEOC Charge.)

As for Nelson's alleged termination in September 2017, the Victory Defendants argue that Plaintiff was not actually terminated, but was confused as to his termination and "unilaterally decided to remain out of work for approximately a month" following the altercation with Chris Orsaris. (Defs.' Mem. at 15.) Nelson testified, however, that Chris Orsaris told him he was fired and that he believed he was fired. (Defs.' Mem. at 14; *see also* Nelson 9/13/2019 Tr. at 211 ("I just told you [Chris Orsaris] said I was fired."), 212 ("I was fired in the middle of the street in a Sunoco station."), 263 (Q. "Would I be correct in saying that you were not terminated?" A. "No, you would not.").) Thus, there is an issue of fact as to whether Nelson was terminated that cannot be resolved on summary judgment. The fact that Nelson later returned to work at Victory does not necessarily undermine his termination-based claims.[7] There are numerous factual disputes regarding Nelson's return to work, including who asked him to return and when; what that person told him; and what authority that person had to re-hire him, if, in fact, that is what occurred. (*See* Nelson 9/13/2019 Tr. at 211-14.)

---

[6] Accordingly, the Court does not address any claim for constructive discharge based on Plaintiff's departure from Victory in 2018. (*See* Defs.' Mem. at 20-21; Nelson 9/13/2019 Tr. at 277.)

[7] However, the fact that Nelson subsequently returned to work will limit any damages to which he is entitled. *See, e.g.*, 42 U.S.C. § 2000e-5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable.").

The Victory Defendants also assert that the racial and age-based remarks alleged by Nelson are not sufficient evidence of discriminatory intent. (Defs.' Mem. at 12, 17.) In determining whether a remark is probative of discriminatory intent, courts in the Second Circuit have considered four factors: (1) who made the remark (*i.e.*, a decision-maker, a supervisor or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process). *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). No one factor is dispositive. *See id*. at 150.

With respect to alleged discriminatory comments based on race, Nelson testified that Chris Orsaris, the person who allegedly fired Nelson in September 2017, referred to him as Uncle Ben and Bill Cosby on a regular basis. (Nelson 9/13/2019 Tr. at 58, 162.) A reasonable juror could find such comments discriminatory. *See Glover v. City of New York*, No. 15-CV-04899 (MKB), 2018 WL 4906253, at *18 (E.D.N.Y. Oct. 9, 2018) ("district courts have found that where the remark mentions or alludes to a protected status or class, it weighs in favor of finding the remarks probative of discrimination") (citing, *inter alia*, *McCall v. Genpak, LLC*, No. 13-CV-01947 (KMK), 2015 WL 5730352, at *14 (S.D.N.Y. Sept. 30, 2015) (finding that a reasonable juror could view the remark as discriminatory where decisionmakers saw the plaintiff wearing a bandana on his head while he was working, and she called him "Aunt Jemima")); *see also* K.J. Greene, *Trademark Law and Racial Subordination: From Marketing of Stereotypes to Norms of Authorship*, 58 Syracuse L. Rev. 431, 444 (2008) (using Uncle Ben as an example of a "race mascot" trademark based on stereotypes). Ultimately, the issue of whether these "comments were innocuous or bear a more

8

ominous significance . . . is for the jury." *Altomare v. Wells Fargo Sec., LLC*, No. 09-CV-09702 PGG, 2012 WL 489200, at *9 (S.D.N.Y. Feb. 15, 2012); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 78 (2d Cir. 2001) (employer's argument that plaintiff's evidence of discriminatory comments was not credible presents a jury argument inappropriate on a motion for summary judgment) (citation omitted).

While Nelson does not claim that Chris Orsaris made discriminatory comments at the gas station at the time he allegedly was terminated, or as part of any decision-making process regarding his alleged termination, a reasonable jury could infer that any decision to terminate Nelson was motivated, at least in part, by racial bias. *See McCall*, 2015 WL 5730352, at *14 (comments by decisionmakers, including referring to the plaintiff as "Aunt Jemima," "Boy" and "Black Boy" sufficient to raise inference of discriminatory intent); *see also Bacchus v. New York City Dep't of Educ.*, 137 F. Supp. 3d 214, 238 (E.D.N.Y. 2015) (frequent remarks regarding plaintiff's national origin and ability to speak English during time period when disciplinary actions were taken against her were probative of bias). Balancing these factors, the Court finds that Nelson has met his "minimal" burden to establish a prima facie case of discrimination based on race. *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 400 (S.D.N.Y. 2014) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)); *see also Burdine*, 450 U.S. at 253 ("The burden of establishing a prima facie case of disparate treatment is not onerous.").[8]

With respect to age discrimination, Plaintiff relies on the same "Bill Cosby" and "Uncle Ben" comments by Chris Orsaris, as well as a comment by Chris Orsaris discussing a stripper and

---

[8] The Court notes that the Victory defendants do not offer a legitimate, non-discriminatory reason for Nelson's alleged termination, instead arguing that he was not terminated.

referring to Nelson as an "old guy" and comments referring to Nelson and another employee as "grumpy old men." (Nelson 9/13/2019 Tr. at 35-37, 39-43.) Unlike in the race context, the alleged Bill Cosby and Uncle Ben comments are not, on their face, related to age. While Nelson may have believed that those comments were tied to his age, as well as his race, that subjective belief is insufficient to raise an inference of discriminatory intent. *See*, *e.g.*, *Jones v. City of New York*, No. 14-CV-00826 (CBA) (RLM), 2015 WL 502227, at *5 (E.D.N.Y. Feb. 5, 2015) ("Although Jones may well have subjectively believed that defendants' comments about her weave were tied to her skin color . . . that is plainly insufficient."). As for the remaining comments, the Court finds that the content and limited frequency of the those comments are insufficient to raise an inference of discriminatory intent based on age. *See, e.g., Ben-Levy v. Bloomberg L.P.*, No. 11-CV-01554 (KBF), 2012 WL 2477685, at *6 (S.D.N.Y. June 26, 2012) (reference to plaintiff as "old timer[ ]" was type of stray remark insufficient to support inference of age discrimination), *aff'd*, 518 F. App'x 17 (2d Cir. 2013); *cf. Zenie v. Coll. of Mount Saint Vincent,* No. 18-CV-04659 (JMF), 2020 WL 5518144, at *5 (S.D.N.Y. Sept. 14, 2020) (few allegedly age-based comments "too sparse and insufficient to support a finding of age-based discrimination" at third step of *McDonnell Douglas* framework). Moreover, Nelson does not adduce sufficient evidence as to when the "grumpy old men" comments were made or that they were made by anyone involved in his alleged termination. (*See* Nelson 9/13/2019 Tr. at 37, 41-43.)

For these reasons, the Court recommends that the Victory Defendants' motion as to Plaintiff's Title VII, Section 1981 and race-based NYSHRL claims based on adverse employment action be denied, but that the Victory Defendants' motion as to Plaintiff's ADEA and age-based NYSHRL claims based on adverse employment action be granted.

10

### B. Hostile Work Environment

Plaintiff also asserts claims of race and age discrimination under a theory of hostile work environment. "A plaintiff may bring a separate cause of action under Title VII for hostile work environment, and this cause of action has also been recognized under Section 1981 and the NYSHRL." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 405 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d Cir. 2014) (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723-24 (2d Cir. 2010) (Section 1981); *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir. 2006) (NYSHRL)); *see also Massie v. Metro. Museum of Art,* No. 11-CV-09549, 2015 WL 3833839, at *6 (S.D.N.Y. June 22, 2015) (holding that Title VII, NYSHRL and Section 1981 hostile work environment claims are analyzed the same way)). A cause of action for hostile work environment also exists under the ADEA. *See, e.g.*, *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 472 (S.D.N.Y. 2013).

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski*, 596 F.3d at 102 (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)); *see also Trachtenberg*, 937 F. Supp. 2d at 472 (noting that same standard applies under Title VII and ADEA). "A plaintiff must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id*. (citing *Hayut v. State Univ. of N. Y.*, 352 F.3d 733, 745 (2d Cir.2003)). "Generally, unless an incident of harassment is sufficiently severe,

'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id*. (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

To analyze a hostile work environment claim, the Court must "look to the record as a whole and assess the totality of the circumstances" and consider a variety of factors including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and the extent to which the conduct occurred because of the plaintiff's membership in a protected class. *See Gorzynski*, 596 F.3d at 102 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Alfano*, 294 F.3d at 374).

The Victory Defendants argue that Plaintiff has not adduced evidence that their actions were sufficiently severe or pervasive. (Defs.' Mem. at 23-24.) To the extent that Nelson asserts a claim of hostile work environment based on age, the Court agrees. The alleged comments calling Plaintiff an "old guy" or a "grumpy old [man]" were neither frequent enough nor severe enough to create a triable issue of fact on his age-based hostile work environment claim. *See, e.g., Alfano*, 294 F.3d at 380 (alleged incidents of sex-based hostility were "too few, too separate in time, and too mild . . . to create an abusive working environment"); *see also Petrosino v. Bell Atl.,* 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Almontaser v. New York City Dep't of Educ.*, No. 13-CV-05621 (ILG) (VMS), 2014 WL 3110019, at *7 (E.D.N.Y. July 8, 2014) (comments that plaintiff was "too old" not sufficiently severe or pervasive to establish hostile work environment claim based on age); *Aiello v. Stamford Hosp.*, No. 09-CV-01161 (VLB), 2011 WL 3439459, at *25-26 (D. Conn. Aug. 8, 2011) (finding no hostile

work environment where plaintiff repeatedly was called "old man" and also was the subject of offensive graffiti).

With respect to race, however, Nelson testified that over a two-year period, Chris Orsaris harassed him on a regular basis, referring to him as "Uncle Ben" and "Bill Cosby" and that Lettas used racial slurs and made discriminatory comments about people of color, including by referring to black customers as "in the niggerative," combining a racial slur with the assumption that a customer had poor credit. (Nelson 9/13/2019 Tr. at 52-62, 110, 162; *see also* Compl. at 5; EEOC Charge; Am. Compl. at 2-3.) Nelson further testified that Chris Orsaris insulted him in front of customers and that this behavior affected his work performance. (Nelson 9/13/2019 Tr. at 77-78, 82-85, 128-43.) Construing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable jury could conclude that Nelson was subject to a hostile work environment. *See McCall*, 2015 WL 5730352, at *25 ("an employer's motion for summary judgment must be denied if the claimed misconduct ranks sufficiently highly on either axis [of severity or pervasiveness]").

In their memorandum of law, the Victory Defendants also argue that Plaintiff cannot prevail on his NYSHRL claim because "the employer never knew about it or condoned it." (Defs.' Mem. at 24-25.) "Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer." *Gorzynski*, 596 F.3d at 103 (citing *Alfano*, 294 F.3d at 373). Under federal law, when "the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Gorsynski*, 596 F.3d at 103 (citations omitted.) Under New York law, however, the circumstances under which liability can be imputed to an employer are more limited. *See McCall*, 2015 WL

13

5730352, at *29. Nonetheless, the Victory Defendants do not cite to any evidence in support of their argument and, thus, have not demonstrated the absence of disputed facts as to this issue. *See Lerer*, 2021 WL 1425238, at *3 ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied.") (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)); *see also Belmonte v. Griffiss Util. Servs. Corp.*, No. 15-CV-00136 (TJM) (ATB), 2017 WL 570925, at *1 (N.D.N.Y. Feb. 13, 2017) ("A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.") (citing *Celotex Corp.*, 477 U.S. at 323).

For these reasons, I recommend that the Victory Defendants' motion be denied with respect to Plaintiff's race-based hostile work environment claims under Title VII, Section 1981 and the NYSHRL and be granted with respect to Plaintiff's age-based hostile work environment claim under the ADEA and the NYSHRL.

### C.      Retaliation

Title VII, the ADEA, Section 1981 and the ADEA also prohibit retaliation against employees who oppose discrimination. *See* 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee "because he [or she] has opposed any practice made an unlawful employment practice."); N.Y. Exec. Law § 296(3-a)(c) (prohibiting an employer from "discharg[ing] or otherwise discriminat[ing] against any person because he or she has opposed any practices forbidden under [§ 296]."); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 355 (2013) (Section 1981 "prohibits not only racial discrimination but also retaliation against those who

oppose it."); 29 U.S.C. § 623(d) (prohibiting discrimination against an employee who "has opposed any practice made unlawful by [the ADEA].")

Plaintiff's retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Frantti v. New York*, No. 19-CV-03999, 2021 WL 864706, at *3 (2d Cir. Mar. 9, 2021) (citation omitted). To establish a *prima facie* case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) the defendant's awareness of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Williams*, 2021 WL 1178118, at *8 (citing *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019).

The Victory Defendants argue that Plaintiff cannot establish a *prima facie* case of retaliation because he has not alleged any protected activity or any adverse employment action. (Defs.' Mem. at 19-20.) For the reasons set forth above, the Court finds that a reasonable jury could conclude that Nelson suffered an adverse employment action. However, the Court agrees with the Victory Defendants that Plaintiff has not adduced evidence that any alleged adverse action was in response to "protected activity." Protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." *Benn v. City of New York*, 482 F. App'x 637, 638 (2d Cir. 2012) (internal citation and quotation marks omitted). Plaintiff testified to various actions taken by the Victory Defendants that he believes were retaliatory, but has not offered evidence as to what the alleged actions for which he was being retaliated against. (*See*, *e.g.*, Pl.'s Resp. Defs.' 56.1 ¶ 30; Nelson 9/13/2019 Tr. at 251-54.) To the contrary, Plaintiff testified that he did not report any of the alleged discrimination by Lettas or Chris Orsaris. (Nelson

9/13/20219 Tr. at 56.) Accordingly, I recommend that the Victory Defendants' motion be granted with respect to Plaintiff's retaliation claims under Title VII, the ADEA, Section 1981 and the NYSHRL. *See Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010) (granting summary judgment on retaliation claims when plaintiff failed to adduce evidence that he complained of discrimination); *see also Brummell v. Webster Cent. Sch. Dist.*, No. 06-CV-06437 (MAT), 2009 WL 232789, at *4 (W.D.N.Y. Jan. 29, 2009) (same).

## II.     **NYCHRL Claims**

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . , construing the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Id*. Accordingly, the Court separately analyzes Plaintiff's NYCHRL claims.

To state a claim of discrimination under the NYCHRL, a plaintiff "must allege that he was treated less well because of his membership in a protected class." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 300 (S.D.N.Y. 2019) (internal quotations, alterations and citations omitted). Thus, "[u]nder the NYCHRL, [ ] unlike under Title VII and the NYSHRL, there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination[.]" *Rothbein v. City of New York*, No. 18-CV-05106 (VEC), 2019 WL 977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019) (citing cases). "Instead, a focus on unequal treatment based on [a protected characteristic]—regardless of

whether the conduct is 'tangible' (like hiring or firing) or not—is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the [NYCHRL]." *Mihalik*, 715 F.3d at 114 (quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 79 (1st Dep't 2009)). As for retaliation claims under the NYCHRL, "the plaintiff must show that [he] took an action opposing [his] employer's discrimination . . . , and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted).

Because I find that the Victory Defendants' motion should be denied with respect to Plaintiff's race-based discrimination claims based on adverse employment action and hostile work environment under the narrower federal and state laws, I also recommend that the motion be denied with respect to his race-based claims under the NYCHRL. As for Plaintiff's age-based NYCHRL claims, I recommend that the Victory Defendants' motion be granted. "[N]otwithstanding the uniquely broad and remedial purpose of the NYCHRL . . . [an] isolated incident of unwelcome verbal conduct is insufficient to support an age discrimination claim under NYCHRL's broad provisions." *Ping Chow Wei v. Antehm Inc.*, No. 16-CV-00468 (SFJ) (AKT), 2018 WL 5622571, at *13 (E.D.N.Y. Sept. 4, 2018) (internal citations, quotation marks and alteration omitted). Moreover, because Plaintiff has not adduced evidence that he "took an action opposing his employer's discrimination," *see supra* Discussion Section I(C), I recommend that the Victory Defendants' motion be granted with respect to Plaintiff's NYCHRL claim based on retaliation.

### III. Plaintiff's Fraud-Based Claims

The Victory Defendants also move for summary judgment on Plaintiff's claims based on wire fraud and identity theft. (Defs.' Mem. at 10-11.) As the Victory Defendants correctly point

out, the federal wire fraud statute does not create a private right of action. *See, e.g. Farmer v. L. Off. Weiner & Weiner, LLC*, No. 19-CV-07115 (GBD) (OTW), 2020 WL 6530882, at *3 (S.D.N.Y. Apr. 6, 2020), *report and recommendation adopted*, 2020 WL 5759055 (S.D.N.Y. Sept. 28, 2020) (citing, *inter alia*, *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999) (noting consensus among Circuits that "Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes.")). Similarly, identity theft "is a criminal cause of action[.]" *Benistar Admin Servs., Inc. v. Wallach*, No. 17-CV-04296 (RRM) (AYS), 2021 WL 1394058, at *5 (E.D.N.Y. Jan. 13, 2021), *report and recommendation adopted*, 2021 WL 1186352 (E.D.N.Y. Mar. 30, 2021); *see also Lama v. New Century Found.*, No. 19-CV-02169 (GHW) (DF), 2019 WL 7599899, at *1 n.3 (S.D.N.Y. Oct. 10, 2019) (no private right of action under Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028).[9] Thus, I recommend that the Victory Defendants' motion be granted with respect to Plaintiff's claims based on wire fraud and identity theft.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Victory Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART as follows: I recommend that the motion be granted with respect to Plaintiff's age-based discrimination claims under the

---

[9] The Court notes that New York's Fair Credit Reporting Act, N.Y. Gen. Bus. L. §§ 380-l and 380-s, "generally prohibits actual or attempted identity theft, defined in relevant part to include the knowing and intentional fraudulent use of something of value in the name of another person without that person's consent." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 442 (2d Cir. 2015). However, "[t]he law authorizes a civil action only if the identity theft 'resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided,'" a circumstance that does not apply here. *Id*. (quoting N.Y. Gen. Bus. L. § 380-1).

ADEA, the NYSHRL and the NYCHRL, Plaintiff's retaliation claims and Plaintiff's claims for wire fraud and identity theft. I recommend that the motion be denied with respect to Plaintiff's claims for race discrimination based on adverse employment action and hostile work environment under Title VII, Section 1981, the NYSHRL and the NYCHRL.

The Clerk of Court is respectfully requested to mail a copy of this Report and Reccomendation to the *pro se* Plaintiff.

Dated:    June 11, 2021
          New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).